# Chicago, B. & Q. R. R. Co. v. The City of Ottawa.

1. CITIES AND VILLAGES.—*Flagmen at Railroad Crossings.*—The legislature has conferred upon municipalities the power to require flagmen at railroad crossings of streets, but this is not to be taken as a limitation of their power to require other safeguards, if, in the opinion of the proper authorities, some other means are necessary for the protection of life and property.

2. POLICE POWERS—*Must be Reasonably Exercised.*—What is or is not reasonable, in the way of police regulations, depends upon the circumstances of each particular case. Municipal authorities must act reasonably and upon necessity, at the peril of having this regulation declared invalid by the courts in case they exceed the proper limits of their authority.

3. SAME—*What is a Reasonable Exercise.*—The act of a municipality in requiring a railroad company to construct and maintain suitable and proper gates, so as to protect all persons crossing its tracks at street crossings, on certain named street crossings, for the purpose of protecting life and property, is a reasonable exercise of police regulations.

**Debt**, for the violation of an ordinance. Appeal from the Circuit Court of La Salle County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

SAMUEL RICHOLSON, attorney for appellant; O. F. PRICE, of counsel.

A municipal corporation can pass no ordinance which conflicts with its charter or any general statute in force and applicable to corporations. Not only so, but it can not, in virtue of its incidental powers to pass by-laws, or under any general grant of that authority, adopt by-laws which infringe the spirit of, or are repugnant to, the policy of the State as declared in its general legislation. Dillon on Municipal Corporations, Sec. 263.

An ordinance must be reasonable, and if it is unreasonable, unjust and oppressive, the courts will hold it invalid and void. The question of reasonableness or unreasonableness of a municipal ordinance is one for the decision of the court, and in determining that question the court will have

regard to all the existing circumstances or contemporaneous conditions, the objects sought to be obtained, and the necessity or want of necessity for its adoption.    Chicago v. Rumple, 45 Ill. 90; Tugman v. Chicago, 78 Ill. 405; City of Lake View v. Tate, 130 Ill. 247; Dill. on Mun. Corp., Sec. 327; Cooley on Taxation, 428; Hawes et al. v. City of Chicago, 42 N. E. Rep. 373; Toledo, W. & W. Ry. Co. v. City of Jacksonville, 67 Ill. 37.

A. E. Wheeler, attorney for appellee.

Railroads can not act recklessly and in disregard of the safety and rights of others.    The State has reserved to itself the power to enact all police laws necessary and proper to secure and protect the life and property of the citizen. Prominent among the rights reserved, and which must inhere in the State, is the power to regulate the approaches to and the crossings of public highways, and the passage through cities and villages, where life and property are constantly in imminent danger by the rapid and fearful speed of railway trains.    The exercise of their franchises by corporations must yield to the public exigencies and the safety of the community.    Toledo, Peoria & Warsaw R. W. Co. v. Deacon, 63 Ill. 93; Hayes v. Michigan Central R. R. Co., 111 U. S. 228; Fertilizing Co. v. Hyde Park, 97 U. S. 659; C. & N. W. Ry. Co. v. City of Chicago, 140 Ill. 309.

Mr. Justice Crabtree delivered the opinion of the Court.

This was an action brought by the city of Ottawa against appellant to recover a penalty for failing to erect gates at the crossings of certain streets in the city, which, by a resolution under the ordinances of the appellee, it was required to construct and maintain.    By the stipulation of the parties filed in the case, it is admitted that the city of Ottawa is duly incorporated under the general laws of this State providing for the incorporation of cities and villages.    It is further admitted that the city council of said city, did, on June 21, 1891, regularly pass an ordinance on the subject of

"Railroads," which was duly published and in force at the time the resolution, hereinafter referred to, was adopted, section 6 of which said ordinance provides as follows:

"Whenever, on any street crossed by the track or tracks of any railroad company, the city council shall deem it necessary to require said railroad company to provide protection against injury to persons and property at such crossings, by the erection and maintenance of gates, guards, or other protection, the city council may by resolution so declare, and direct that such railroad company shall, within a certain time to be fixed by the city council, erect, construct and maintain a sufficient safeguard at such crossings, specifying the kind of protection to be erected, constructed and maintained as aforesaid, whether it be a gate or gates, or other protection; and it shall be the duty of the city marshal to serve upon the said railroad company named in said resolution a certified copy thereof, within ten days after the passage of such resolution, and at the same time to notify the said railroad company in writing of the time fixed by the city council within which the protection so ordered shall be constructed."

And the next section of the ordinance provided a penalty of not less than one hundred dollars nor more than two hundred dollars for a failure to comply with said ordinance. It is further admitted, that while said ordinance was in force, a resolution was passed by the said city council, as follows: "That the Chicago, Burlington and Quincy Railroad Company be required to erect, construct and maintain suitable and proper gates, so as to protect all persons crossing its tracks at street crossings, at both sides of its tracks, on the following named street crossings: One set of gates on Main street at Madison street, at Jefferson street, at Lafayette street, at First street; each and all of said streets above named, upon which a separate set of gates is required, as above stated, being within the city of Ottawa, La Salle county, Illinois. Said gates to be erected within thirty days after notice." It is also admitted that the proper notices were served upon appellant by the city marshal, according

to the provisions of the ordinance. It was further admitted that no gates had been erected by appellant in pursuance of said resolution and notice. By agreement of parties the cause was tried to the court without a jury, resulting in a judgment in favor of appellee for $100 damages and for costs. The only assignment of error is as follows: "The Circuit Court erred in rendering judgment against said appellant in said cause."

A reversal is insisted upon by appellant for two reasons: First, that there is an entire want of power in the city council of appellee to pass such an ordinance and resolution; and second, that it is unreasonable, contrary to public policy, and void.

Among the powers conferred by the legislature upon cities and villages by the general law is the following:

"To require railroad companies to keep flagmen at railroad crossings of streets, and provide protection against injury to persons and property in the use of such railroads. To compel such railroads to raise or lower their railroad tracks to conform to any grade which may at any time be established by such city, and when such tracks run lengthwise of any such street, alley or highway, to keep their railroad tracks on a level with the street surface, and so that such tracks may be crossed at any place on such street or alley or highway." * * * 1 Starr & Curtis, p. 415, par. 27. We can not agree with the contention of counsel for appellant that because the above statute specifically confers upon a municipality the power to require flagmen at railroad crossings of streets, that this is to be taken as a limitation of their power to require any other safeguards, if in the opinion of the proper authorities of the city or village, some other means are necessary to the protection of life and property. Effect should be given to all the words of the statute, if that can reasonably be done. The law above quoted clearly gives the power to require flagmen at railroad crossings of streets, but it goes further; it gives power to "provide protection against injury to persons and property." If the first clause of the sentence is to be taken as

expressive of the entire power intended to be given to municipal corporations in affording protection to persons and property at the railroad crossings of streets, then the second clause of the sentence is meaningless. We think the legislature meant something by the words used, and intended to give the power, where, in the opinion of the municipal authorities a flagman would not afford adequate protection to life and property, to provide other means which would do so. We feel constrained to hold that the city council of the city of Ottawa had the power to pass the ordinance and resolution in controversy.

The question remains, however, whether the power has been reasonably exercised, or, in other words, whether the ordinance under which this prosecution was had was a necessary and reasonable exercise of the police power or was burdensome, unnecessary and unreasonable so far as appellant is concerned. What is, or is not reasonable, in the way of police regulations, is a question to be determined from a consideration of the circumstances of each particular case.

In the case of T., W. & W. Ry. Co. v. City of Jacksonville, 67 Ill. 37, an ordinance of the city requiring the railroad company to keep a flagman by day and a red lantern by night at a point where its track crossed a certain street within the city, was held not to be a reasonable requirement under the facts appearing in that case, but we not regard that decision as authority for holding that the city authorities may not judge of the necessity of even unusual safeguards at dangerous places, such as railroad crossings in populous localities, when the public welfare demands them. These municipal authorities must, of course, act reasonably and upon necessity, at the peril of having their regulations declared invalid by the courts in case they exceed the proper limits of their authority, but we think in the first instance it should be presumed they have acted in good faith, and that the regulation is made because they consider it necessary for the public safety, and some regard should be paid by the court to their judgment in that behalf, leaving it for the party complaining that the regulation is burdensome to

show that fact affirmatively by proof. We do not think
such proof has been made in this case. That such regula-
tions as the one in question are an absolute necessity in
populous cities is too plain for argument. The daily obser-
vation and experience of mankind demonstrates that with-
out such precautions human life is unsafe. In the case re-
ferred to, *supra*, the Supreme Court said: "Doubtless as
the population increases and the dangers multiply it will
become necessary in this country to increase precautionary
measures for the public safety, and the companies will be com-
pelled to bear the additional burden made necessary by the
hazardous business in which they are engaged. It is their
work which renders public crossings dangerous, and hence
it is they may be compelled to bear the expense of such
measures as may be adopted to secure the lives and prop-
erty of those who have an equal right with them to the use
of the crossing on the highway." Again in T., P. & W.
Ry. Co. v. Deacon, 63 Ill. 91, cited with approval in C. & N.
W. Ry. v. City of Chicago, 140 Ill. 309, it was said: "The
State has reserved to itself the power to enact all police
laws necessary and proper to secure and protect the life
and property of the citizens. Prominent among the rights
reserved, and which must inhere in the State, is the power
to regulate the approaches to, and the crossings of, public
highways, and passage through cities and villages, where life
and property are constantly in imminent danger, by the rapid
and fearful speed of railway trains. The exercise of their
franchises by corporations must yield to the public exigen-
cies and the safety of the community." We think the tend-
ency of modern legislation and the decisions of courts is
to provide adequate protection to life and property at rail-
way crossings of streets and highways. It may be burden-
some to a railway company to keep flagmen at crossings,
erect and maintain gates, raise or lower their tracks to con-
form to such grades as the city or village may establish,
because all these things are expensive, and place an addi-
tional burden upon the corporation, but they are not nec-
essarily unreasonable because they are burdensome and

expensive. If the public safety or interest makes these requirements reasonably necessary, then railroad companies in the exercise of their franchises, must yield to the necessity. We think the judgment should be affirmed.

Judgment affirmed.