THE ELGIN, AURORA AND SOUTHERN TRACTION COMPANY

*v.*

NATALIE WILSON.

*Opinion filed October 24, 1905.*

1. CARRIERS—*when proof of collision without fault of passenger makes a prima facie case.* Proof of a collision between two trains of the same carrier, resulting in injury to a passenger not shown to have been negligent, authorizes a recovery of damages unless the carrier can show that the collision was not the result of any failure to exercise the degree of care owing by it to its passengers.

2. SAME—*effect of leaving a switch unlocked and unguarded.* Whether or not a carrier's failure to keep a main-track switch locked or to have it guarded by someone to prevent the switch from being improperly thrown constitutes actionable negligence, is a question which is properly left to the jury under instructions stating the rule as to the care required of a carrier for the safety of its passengers.

3. SAME—*effect where collision is caused by the tortious act of a stranger.* That a collision was caused by the tortious act of a stranger does not relieve the carrier from liability to an injured passenger if the carrier's failure to do something which human foresight and forethought would have suggested presented the opportunity for the commission of the tortious act.

4. EVIDENCE—*when proof of condition of cars after collision is proper.* Proof of the badly broken condition of the cars after the collision in which the plaintiff was injured is proper, as tending to sustain an allegation of the declaration charging that the car was being driven at a dangerous speed, where the rate of speed is a contested question of fact.

5. SAME—*variance—word "body" includes limbs.* Proof that plaintiff's injury consisted of a fracture of one leg and an injured elbow is not variant from an allegation charging that "divers bones of her body" were broken, since the word "body," within the meaning of such an allegation, includes the limbs.

6. SAME—*expert opinion should not be based on testimony as witness construes it.* If the opinion of a medical expert is desired on the case made by the testimony the questions should be put hypothetically, and it is not proper to permit him to give an opinion based upon the testimony as he has construed and weighed it from having heard it.

7. SAME—*when permitting evidence that neurasthenia may be caused by fright is not error.* Where the defendant's witnesses testify that neurasthenia, which the plaintiff claims was brought on by the collision in which she sustained her injuries, might have been occasioned by other causes than the collision, it is not improper to permit the plaintiff, on cross-examination, to show that it might be caused by sudden fright and terror, where the plaintiff's physical injuries were received contemporaneously with the alleged fright and terror.

8. TRIAL—*when argument is not improper.* Argument by the plaintiff's counsel to the jury, based upon the alleged negligence of the defendant in failing to lock a switch or watch and guard it, is not improper, where the boy who improperly threw the switch testified that it was not locked and there is testimony that the switchtender was away watching a ball game.

9. SAME—*permitting jury to take pleadings is not commendable practice.* While the practice of permitting the jury to take the pleadings to the jury room is not commended, yet it is not reversible error to permit such course; but counts in the declaration which have been. held bad on demurrer should not accompany the other pleadings.

10. APPEALS AND ERRORS—*when a party cannot avail of error.* Error in permitting the jury to take to the jury room the declaration, containing counts to which demurrers had been sustained, can not be availed of by the defendant, where his counsel declined the plaintiff's offer to remove the objectionable counts, saying that they merely wanted the record to show that they had objected and taken exception to the overruling of the objection.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. H. B. WILLIS, Judge, presiding.

HOPKINS & SCOTT, and J. A. RUSSELL, for appellant.

· WALTER E. HEALY, and MURPHY & ALSCHULER, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

A judgment in the sum of $3000, entered in the circuit court of Kane county in favor of the appellee and against the appellant company for damages arising from a personal injury, was affirmed in the Appellate Court for the Second District. This is an appeal from the judgment of affirmance.

The trial court did not err in refusing to direct a peremptory verdict for the appellant company.

On August 2, 1902, a game of base ball was being played in the park along the line of the appellant company's railroad, about two and one-half miles from the city of Elgin and about the same distance from the city of Dundee. The company maintained a switch at the park and had transported a number of passengers from Elgin and Dundee to witness the game. The cars on which such passengers had been carried were run in upon the switch, there to remain until after the game, then to be used for the reception and return of the patrons of the game to their homes. The regular half-hourly service of other cars of the company was maintained along the main track to Carpentersville. One George L. March, an employee of the appellant company, was in charge of the switch on that day. After all of the cars that were used in conveying patrons of the ball game had arrived and had been placed on the switch, March closed the switch, leaving the main line open for the use of cars passing to and fro thereon. The switch was opened and closed by means of an iron arm or lever, and was moved by lifting up the lever from the ground and throwing it over in the opposite direction. The lever was not locked, but could be moved and the switch opened by anyone. After throwing the lever so as to close the switch and leave the main track open for the passage of cars in the regular service of the company, the switch tender, March, left the switch and went into the park where the game of ball

217—4

was in progress. The park was enclosed with a tight plank fence about eight feet in height. A number of boys were playing near about the switch. One of them, Frank Lieb, about half an hour after March had left the switch, lifted up the arm or lever by which the switch was opened and closed and threw it over, and this moved the rails of the switch track so that the switch, at its south end, connected with the track of the main line. A car which the appellant company was operating from Elgin to Carpentersville and upon which appellee was riding as a passenger, which was moving at a high rate of speed on the main track, ran in upon the switch and collided with the empty cars standing thereon, and the appellee received the injuries for which she brought this action.

The declaration contained six counts, and, among other alleged acts of negligence, relied upon the failure of the company to have the switch lever locked, and also a failure to have the same guarded, as grounds of actionable negligence. The testimony of the boy, Frank Lieb, showed that the appliance for moving the switch was not protected by a lock or otherwise, and could be moved by anyone. Other testimony disclosed that the switch tender in charge of the switch had gone from his post into the park where the game of ball was being played, and was there when the collision occurred. Whether the failure to have the switch appliances provided with locks of some character, or, in the absence of such lock, to have a guard to watch and see that the switch was not improperly thrown or turned, constituted actionable negligence, was properly submitted by the court to the jury, under instructions advising the jury that it was the duty of the appellant company, as the carrier of passengers, to do all that human care, vigilance and foresight could reasonably do for the protection of its passengers, that was consistent with the mode of conveyance it was engaged in providing and the practical operation of its road and of its business as a carrier of passengers.

The appellant company is a common carrier of passengers for hire. The appellee became a passenger on one of its cars. The rule of liability is that applicable to the relation of carrier and passenger. Proof that the appellee was a passenger, that the car in which she was riding collided with another car and that she was injured, no negligence appearing on her part, made a *prima facie* case of negligent failure on the part of the appellant to discharge the duty it owed to her, and entitled her to recover damages for the injuries sustained by her unless the appellant company, by proof, should acquit itself of the presumption that the collision was in some way occasioned by its failure to discharge its duty as a public carrier to the appellee, as its passenger. (*Galena and Chicago Union Railroad Co.* v. *Yarwood,* 15 Ill. 468; *Same* v. *Same,* 17 id. 509; *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Thompson,* 56 id. 138; *Peoria, Pekin and Jacksonville Railroad Co.* v. *Reynolds,* 88 id. 418; *Eagle Packet Co.* v. *Defries,* 94 id. 598; *North Chicago Street Railway Co.* v. *Cotton,* 140 id. 486; *New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal,* 160 id. 40.) The same doctrine or rule is announced by Mr. Thompson in his work on Negligence. (3 Thompson on Negligence, 2758, 2761.)

The doctrine to be deduced from the above cases is, that when one becomes a passenger on a car of a common carrier to be transported from one station on its line to another, and has paid a consideration therefor, the contract on the part of the carrier is to provide safe and sound cars, track and necessary appliances to carry the passenger to his or her destination without injury. Where such a passenger is injured by a collision, proof of the relation of passenger and carrier, of the collision and the injury, if no contributing negligence on the part of the passenger appears, makes a *prima facie* case for the resulting damages, and casts upon the common carrier the onus of proving that the injury resulted from inevitable accident or from some cause against which human prudence

and foresight could not have provided. The mischievous act of the boy, Lieb, contributed to the injury in the case at bar. The failure of the company to provide some means for locking the switch arm or lever, or to have some one to prevent the disarrangement of an appliance so easily rendered dangerous to its passengers, was justly regarded by the court as a failure on its part to perform its obligation and duty to those who had entrusted themselves to its care as a public carrier. That a collision was caused by the tortious act of a stranger could have no effect to relieve the common carrier from responsibility to an injured passenger, if the failure of the carrier to do that which human foresight and forethought would have suggested presented the opportunity for the commission of the tortious act.

The court did not err in its rulings as to the admissibility of proof as to the condition of the car in which the appellee had been riding, and of the car with which it collided, after the accident. Whether the car upon which the appellee was riding as a passenger was moving at a very rapid or at a moderate rate of speed was a contested question of fact. One charge of negligence in the declaration was, that the car was being driven at a dangerous rate of speed and that the collision was the result thereof. The manner in which these cars were driven together and broken and damaged, as shown by the proof, tended to support the view of the appellee that the car in which she was riding was moving at a very great rate of speed.

Witnesses for the appellee were permitted, over the objection of the appellant company, to state that the switch in question could be seen from the front platform of a car approaching from the south a distance of three hundred feet. It is urged that there was no attempt to show that the size and speed of the car from which the witnesses made their observations, the physical conditions of the track and the surroundings of the right of way were the same as at the time of the accident, and that for such reason it was error to admit the

proof complained of.   We have examined the record, and think it was shown that the essential conditions were the same when the experiments were made and when the accident occurred.   But aside from that, if error in this respect occurred it would not justify a reversal of the judgment. The appellee, in part, relied on the charge that the displacement of the switch was visible to the motorneer at such a distance therefrom that had he been watching the track, as it was his duty to do instead of trying to see the ball game, as she insisted the proof showed he was doing, he would have discovered that the switch had been turned in time to have stopped the car and averted the accident.   The evidence under consideration was directed to this issue, and this only. As we have seen, the appellee was entitled to recover unless the appellant company should, by proof, overcome the presumption which arose against it.   This it ineffectually attempted to do by showing that the switch was turned by the boy, Lieb, for the proof introduced on its part for this purpose indisputably established that the real cause of the injury was the failure of the employee which the company had placed there in charge of the switch, to remain at his post and see that the switch was not tampered with, or the failure of the appellant company to provide a lock for the switch arm or lever, in consequence whereof a dangerous appliance of the company's road was left unprotected against the pranks of mischievous boys.   This state of case, aside from the alleged negligent failure of the motorneer to observe the displacement of the switch, demanded a verdict and judgment for the appellee.

The declaration alleged that the appellee "was greatly bruised, hurt and wounded and divers bones of her body were there and then broken, and she became sick," etc.   The proof showed a fracture of the tibia of the left leg and an injury to the right elbow, and we are urged to reverse the judgment on the ground that there is a clear distinction between the body and the limbs of the body, and consequently

there is a variance between the allegations of the pleading and the proof. One definition given by Mr. Webster of the word "body" is, "the entire physical part of a man." This meaning is properly to be given the word as employed in the declaration, and it was not essential there should be greater particularization as to the bones that were broken.

It is complained that Dr. Strum, a witness for the appellee, was allowed to state his opinion as a medical expert not based on a hypothetical state of facts, but, in part, upon the testimony of the appellee as a witness, as the doctor heard and construed her testimony. A physician or a surgeon who has treated a patient may express an opinion as to the physical condition of such patient based on information gained while so administering professionally for the affliction, or a physician may testify as an expert from information obtained from a physical examination of the person who is the subject of the inquiry. If the opinion of a physician is desired on the case made or claimed to be made by the testimony produced on the hearing, he should not be permitted to state his opinion based on the conclusion arrived at by himself as to the case made by the evidence as he heard it and gave it weight. The proper course is to state hypothetically the case which the party producing the witness thinks has been proved and to ask an opinion based on such hypothetical case. The jury, who are the judges as to what has been proven, may then apply the opinion of the expert, if in their judgment the state of case on which it was based has been proven. To permit the expert to base an opinion on the testimony as he construes and has weighed it would be to permit him to exercise the functions of the jury, and, in a sense, decide the whole issues for them. *Pyle* v. *Pyle,* 158 Ill. 289; *Grand Lodge* v. *Weiting,* 168 id. 408.

But the rule is that a court of review will not consider any other ground of objection than that urged in the court below. (3 Ency. of Pl. & Pr. 223.) Dr. Strum testified that he had made two examinations of the person of the appellee

and that he was present and heard her testify as a witness. He was then asked the following question, to which objection was made, as shown below: "In view of that and in view of the examination you have made, and also in view of the symptoms you have discovered by means of your examination, what relation, would you say, does her present condition bear to the injuries mentioned? (Objected to on the ground that the question is not predicated on the testimony in the case.)" The ground or grounds of this objection are not entirely clear. The ground intended to be advanced may have been that it was improper to base an opinion on anything save the testimony heard by the expert, and was improper because it asked for an opinion based also, in part, on the personal examination of the appellee. It may have been on the ground that it was improper because it was not predicated on all of the testimony in the case relative to the physical condition of the appellee. Giving to the objection either of these meanings, if either ground of objection had been sustained the correct rule would not have been applied.

The testimony in behalf of the appellee tended to show she suffered from neurasthenia as a result of the collision. Physicians introduced by the appellant company gave testimony tending to show that neurasthenia with which the appellee suffered might have been occasioned by various specified causes other than the physical injuries suffered by the appellee. On cross-examination the counsel for appellee were permitted to ask if neurasthenia could not be produced by great and sudden fright, and the witnesses answered that it could be so produced. It is urged that fright alone cannot sustain a recovery of damages. The doctrine seems to be that liability cannot exist if predicated on fright or terror unaccompanied by contemporaneous physical injury. (*Braun v. Craven*, 175 Ill. 401; 8 Am. & Eng. Ency. of Law,— 2d ed.—665; 13 Cyc. 42, 43.) Here the appellee received physical injuries contemporaneously with the alleged fright or terror.

The contention that counsel for the appellee were permitted to indulge in improper argument is without merit. The specific ground of this complaint is, that counsel insisted, in argument to the jury, on recovery on the ground the appellant company had negligently failed to lock the switch or negligently failed to watch and guard the switch. This argument is denounced as improper on the assertion there was no proof to sustain either of the alleged delinquencies. It appeared from the testimony of the boy, Lieb, that the switch arm or lever was not locked, and from other testimony in the case that the employee of the company in charge of the switch was within the enclosure of the park when the boy turned the switch.

Demurrer was sustained to the third and fourth counts of the declaration, and it is complained that the court permitted the entire declaration containing said third and fourth counts to be taken by the jury when they retired to consider of their verdict. The practice of permitting the pleadings in civil actions to be taken by the jury in their retirement is not to be commended. Counsel may procure the court, in the instructions, to state the issues to the jury, and that course should be resorted to. It is not, however, error of reversible character to send the pleadings to the jury, but counts in the declaration to which demurrers have been sustained should not accompany the other pleadings. When the appellant company's counsel objected to the declaration going to the jury, counsel for the appellee stated to the court and to counsel for the appellant that if counsel for the appellant would state that they desired the counts to which demurrers had been sustained to be removed from the declaration it would be done. Counsel for the appellant replied that they simply wanted the record to show they had objected and that the objection had been overruled and that they had excepted. It is manifest, counsel for the appellant were not endeavoring to prevent erroneous action that would prejudice the cause of their client, but were only seeking to inject error into the

record. They could have voluntarily avoided the error, but declined, in order that, in the event of an unfavorable verdict, they might obtain a reversal upon merely technical grounds. We will not entertain the objection.

We do not think that instructions Nos. 1 and 2 authorized the jury to return a verdict for the appellee on ground of recovery not charged in the declaration, as counsel for the appellant urge. These instructions advised the jury as to the degree of care required of the appellant as a public carrier, and directed them, in instruction No. 1, that "if, from the evidence, the jury believe that the company failed to exercise toward the said plaintiff, at the time in question," such degree of care and that she was injured thereby, she could recover; and by the second instruction, that she could recover if the jury "found, from the evidence, the defendant did not exercise" the specified degree of care. The jury were restricted to grounds of recovery disclosed by the evidence. It is not contended that the court permitted evidence to be produced that was not applicable to the issues made by the pleadings, hence the instructions did not authorize a verdict for appellee except upon the issues under the pleadings.

Instructions Nos. 17, 18 and 19 asked by the appellant were properly refused. Nos. 17 and 18 declared there could be no recovery if the accident and injury could not have occurred if the switch had not been turned or misplaced by the boy, Lieb. If, as we have seen, the appellant company owed it to the appellee as a legal duty, as a public carrier, to lock or guard the switch and failed to discharge that duty, the right of recovery existed notwithstanding the tortious act of Lieb intervened to occasion the collision. No. 19 was properly refused, for the reason it required only the exercise of reasonable care on the part of the appellant company in the management of the road and the management of the car in the transfer of the appellee to her destination.

The judgment must be and is affirmed.

*Judgment affirmed.*