## Chicago & Alton Railway Company v. Julie Etta Averill.

1. SAFETY GATE REQUIREMENTS—*power of municipality with respect to.* A municipality has power to compel a railroad company to erect and maintain safety gates at crossings, and such company is not entitled to the notice provided for by statute where it is required to place and retain a flagman at such crossing.

2. RELEASE—*when does not discharge joint tort-feasor.* An agreement by which the plaintiff agrees not to sue one of several joint tort-feasors, does not operate as a release and discharge of another joint tort-feasor.

Action on the case for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed June 8, 1906.

PATTON & PATTON, for appellant; F. S. WINSTON, of counsel.

GEORGE W. KENNEY and R. H. PATTON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case originally brought by appellee against the Springfield Consolidated Railway Company and appellant, to recover damages for an alleged injury received by appellee while a passenger on a car of the street car company with which an engine of the appellant

collided. A declaration was filed charging various acts of negligence against both defendants. The street car company afterward paid appellee $1,250, and the suit was dismissed as to it. All of the original counts of the declaration were then withdrawn and six amended counts filed, in which the alleged negligence of the street car company was eliminated. To the amended counts the general issue and four special pleas setting up an alleged release of the street car company were filed. To the special pleas appellee replied that the consideration for the payment of the sum of money by the street car company was merely an agreement not to sue and not the release of the company from liability. At the close of her evidence appellee withdrew all counts but the first, which charges a duty by ordinance to erect and maintain safety gates, a breach of that duty and an injury as the proximate result of that breach. The jury returned a verdict for $1,250, upon which judgment was rendered.

The evidence tends to prove the following facts: On the evening of the accident appellee was a passenger upon a car of the street railway company going east on Monroe street in the city of Springfield. As the street car approached the tracks of appellant, which ran north and south and crossed those of the street car company at Third street, the conductor, who had alighted and gone ahead of the car, observed a train approaching on appellant's road from the south, and attempted to signal the motorman to hold the car. The motorman thought the signal meant to go ahead and started the car, which, upon reaching appellant's tracks, was struck by the approaching train, thrown off its track and dragged some thirty feet. Safety gates had for some time been maintained by appellant on both sides of Third street, but which were operated in the day-time only, and were at the time of the accident raised or open. The gate-tender or watchman was not on duty at the time.

Section 759 of an ordinance of the city then in force provided, in substance, that railroad companies should, at the crossing in question, construct and maintain, upon each

side of the railroad tracks operated by them, safety gates that would intercept travel across such track until raised or opened. Section 760 of the same ordinance provided that such railroad companies should have a competent person in charge of such gates who should, upon the approach of any train, close and keep closed the gates until the train had passed, and that such gate-tender should, by means of a flag in the day-time and a colored light at night, warn all vehicles of the approach of any train on said railroad. It is contended that said ordinance is void for the reason that it is an unreasonable exercise of the police power to require a watchman day and night at a crossing not shown by the evidence to be much used and peculiarly dangerous. Such contention is not well founded. In the absence of an affirmative showing that an ordinance is unreasonable and burdensome, the presumption will be indulged that it is reasonable. Ry. Co. v. City of Ottawa, 65 Ill. App. 631. In the case at bar no proof was introduced or offered tending to show the extent of travel by the public at the point in question of the number of trains passing there in the night-time. In the absence of such proof it will be presumed that the city council acted in good faith, and that the adoption of the ordinance was essential to the welfare and safety of the public.

It is next urged that no right of recovery can be predicated on the ordinance, because it is not alleged or proved that notice to comply therewith had been given in writing to appellant, as provided by paragraph 99 of chapter 114 of the statutes (Rev. Stat. 1905, page 1583), which reads as follows: "In all cases where the public authorities having charge of any street over which there shall be a railroad crossing, shall notify any agent of the corporation owning, using or operating such railroad, that a flagman is necessary at such crossing, it shall be the duty of such railroad company, within sixty days thereafter, to place and retain a flagman at such crossing, who shall perform the duties usually required of flagmen," etc.

We are of opinion that the section of the statute quoted

is not applicable to the ordinance in question so far as it provides for the maintenance of safety gates. The power to require them is conferred by paragraph 62 of chapter 24 of the statutes, which provides in part, that city councils shall have power not only to require railroad companies to keep flagmen at railroad crossings of streets, but to provide protection against injury to persons and property in the use of such railroads. While the statute in terms makes notice essential to the effectiveness of the portion of the ordinance requiring flagmen, we do not think this is so as to safety-gate requirements.

It is further urged that the failure to lower the gates was not the proximate cause of the injury to appellee. We cannot say, as a matter of law, that this is so. Certain it is that had not the ordinance been violated, the accident would not have occurred. The obvious purpose of requiring safety gates at the railroad crossing was to protect persons who might be imperiled through the existence of the crossing without regard to the degree or specific origin of the danger. That an accident such as the one in question was liable, in the ordinary course of events, to follow a failure to maintain and operate the safety gates, is also certain. Whether or not the negligence of appellant was the proximate cause of the injury was a question of fact for the jury. The fact that the perils of the situation were increased through the added negligence of the street car employees, we do not regard as material. Siegel v. Trcka, 218 Ill. 550.

Prior to the dismissal of the suit as against the street car company, said company paid to appellee the sum of $1,250, pursuant to a written agreement between the parties, which reads as follows: "This agreement made and entered into this 23rd day of June, 1904, by and between Julie Etta Averill, party of the first part, and the Springfield Consolidated Railway Company, party of the second part, witnesseth that said first party hereby agrees with said second party that she will not sue said second party by reason of any matters existing between said parties at this date; but it is hereby agreed and understood that this con-

tract shall not be or be held or construed to be a release of any damages or right of action arising to said first party, by reason of any matters at this date existing. Said second party, in consideration of the above promise and agreement of said first party, agrees, immediately upon the execution and delivery of this agreement, to pay to said first party the sum of one thousand two hundred and fifty dollars ($1,250.00), the receipt of which is hereby acknowledged."

Appellant insists that the consummation of said agreement operated to bar the present action as against it, under the well-known rules of law that a release to one of several joint *tort-feasors* is a release to all, and an accord and satisfaction with one of them is a bar to an action against the others. The agreement in question is on its face merely a covenant not to sue; not a release or satisfaction of damages, but only a payment in part of the same. The parol evidence relative thereto did not tend to prove the contrary. The transaction was therefore no bar to the present suit. It was, in fact, for the interest of appellant that appellee should receive part payment of her claim from the street car company, and thereby reduce the amount of damages recoverable from appellant. City of Chicago v. Babcock, 143 Ill. 358; R. R. Co. v. Piper, 165 Ill. 325. In order to sustain its pleas it was necessary for appellant to show that the street car company was released, and this it failed to do.

It is strenuously contended that the verdict is excessive for the reason that the present state of appellee's health is not shown to be due to the accident. The damages to be awarded in cases of this character are obviously impossible of mathematical ascertainment and the determination thereof is properly left to the jury. There is nothing in the record indicating that the jury in the present case were actuated by improper motives, nor that their verdict was the result of improper rulings of the court upon the evidence or instructions. Whether the state of health of appellee at the time of the trial was due to a shock to her nervous system, or whether it was wholly or partially due

to her condition of health prior thereto, and to what extent, were questions for the jury, and there is nothing in the record to warrant our disturbing their findings relative thereto. We are not prepared to hold where a woman who is predisposed to neurasthenia, becomes a passenger upon a street car, she assumes the risk of such injuries resulting from the negligent operation thereof, as would not befall a person in average health. On the contrary, we are of opinion that notwithstanding her present state of health might have in all probability, in any event, existed at some future time, if the jury believed from the evidence that by reason of the violence of the collision a nervous shock was sustained by her and that the same served in any degree to accelerate or precipitate such condition, that fact was proper to be considered by them in assessing her damages. That a nervous shock to one in the condition of appellee would naturally and reasonably follow the overturning and dragging of the car is too obvious for argument. We regard it as immaterial whether or not the shock was accompanied by, or incidental to other physical injuries, for the reason that we think that any direct injury to the nervous system through violence may properly be regarded as physical, in contradistinction to fright or mere mental distress. However that may be, the doctrine seems to be that a liability for injuries predicated upon fright or terror exists, when physical injuries are, as in this case, received contemporaneously therewith. Traction Co. v. Wilson, 217 Ill. 47.

The evidence shows that appellee was badly injured and bruised upon her body, head and limbs; that from the time she was injured until the trial she had continually suffered severe pain, and for several weeks was unable to rest in a natural position, and had great difficulty in sleeping. There is also evidence tending to show that as a result of the shock to her nervous system, she was suffering from neurasthenia, which condition was likely to be permanent. As has been stated, she has received as part compensation for her injuries the sum of $1,250 paid by the street car com-

pany. She has been awarded a like sum by the jury. We are unable to say that the verdict is clearly excessive notwithstanding the payment by the street car company.

The remaining errors assigned are disposed of by what has been said, contrary to the contentions of appellant.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*