## William F. Barker, Appellee, v. Chicago, Peoria & St. Louis Railway Company, Appellant.

1. PASSENGER AND CARRIER—*when doctrine res ipsa loquitur applies.* When a passenger is injured by a collision, proof of the relation of passenger and carrier, of the collision and injury, if no contributory negligence upon the part of the passenger appear, makes a *prima facie* case for the resulting damages and costs upon the carrier; the *onus* of proving that the injury resulted from

THIRD DISTRICT—MAY, 1909.    521

Barker v. Chicago, Peoria & St. Louis Ry. Co., 149 App. 520.

inevitable accident or some cause against which human prudence and foresight could not have provided, is on the carrier.

2. PASSENGER AND CARRIER—*status of United States postal employe.* A United States postal employe while engaged in the performance of his duties upon a railway train is a passenger entitled to all rights as such as against the carrier.

3. VERDICTS—*when not excessive.* *Held,* that a verdict for $6,000 reduced by *remittitur* to $3,000 rendered in an action on the case for personal injuries was not so excessive as to warrant a reversal of the judgment, it appearing that the plaintiff at the time of the injury was about 44 years of age, that he had previously been in good health and had been in the government employ for about 16 years; that he received cuts and bruises about the face, head, leg and back; that five of his ribs were fractured, two of them being so sunk as to create a deep depression which yet existed; that he remained in bed at the hospital ten days, and at his home 50 days; that he suffered great pain, lost much sleep and that he had not at the time of the trial recovered from the shock to his nervous system; that his hearing was seriously and permanently impaired, his capacity for breathing weakened and a pressure caused on his heart and lungs so as to render him more susceptible to lung trouble.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1908. Affirmed. Opinion filed May 19, 1909.

WILSON, WARREN & CHILD, for appellant.

ALBERT SALZENSTEIN and JOHN L. KING, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

In an action for the recovery of damages for personal injuries alleged to have been sustained by him through the negligence of the appellant company, appellee recovered a judgment for $3,000, to reverse which this appeal is prosecuted.

The declaration charged that on December 21, 1906, defendant operated a train for the conveyance of goods, passengers and mail; that it had certain switch connections in the city of Springfield from which loaded cars were run from the Illinois Collieries Com-

522     APPELLATE COURTS OF ILLINOIS.

Barker v. Chicago, Peoria & St. Louis Ry. Co., 149 App. 520.

pany mine on to its main track; that the plaintiff was on said day a postal clerk in the employment of the government, and in the discharge of his duties in one of the mail cars of the defendant; that while in the exercise of due care for his own safety the defendant so negligently guarded its main track and improperly managed its said train that by reason thereof two loaded coal cars suddenly ran uncontrolled from the mine switch track on to the main track of the defendant and collided with its said train, thereby causing injuries to the plaintiff.

It was stipulated by the parties upon the trial that at the time the plaintiff was injured he was in a railway postal car in the train of the defendant in the discharge of his duties as a railway mail clerk pursuant to a contract between the United States government and the defendant for the carriage of mails between Peoria and Springfield; that such contract consisted of an advertisement for bids by the government, the bid made by the defendant which was made subject to all the statutes and postal regulations of the United States concerning railway mail service, and an acceptance of said bid by the government. It was further stipulated that each and every postal regulation and statute of the government concerning the transportation of mails by railways constitute the terms and conditions of said contract; that all of the foregoing facts should be considered as proven at the trial of the case, and that either party might refer to and rely upon any of said facts, postal regulations and statutes as fully as though the same were copied at length in the record.

The evidence tends to disclose the following facts: At the request of a former owner of the mine a predecessor of the defendant had constructed upon the land of the mining company a switch track under the tipple of the mine and connected the same at both ends with the main track of the railway; that the intersection of this switch with the main track was a derailing de-

vice to prevent cars running from the switch of the Mining Company on to the main track of the railway, which device was under the exclusive control of the defendant, and had at the time no lock upon it and could be readily opened or closed. It had been the practice of the defendant to set empty cars on to the south end of the switch track where the employes of the mining company took charge of the same, and moved them to the loading place and when loaded, to the north end of the switch. When loaded cars were billed out, the defendant's engine entered the north end of the switch and took the cars for shipment. From the tipple of the mine to the north end of the switch there was a slight decline in the grade which enabled the mining company to drop the cars from the tipple to the north end of the switch by gravity.

On December 20, 1906, about 10 o'clock at night, the employes of the defendant removed all loaded cars from the north end of the switch except one, for which it had no billing, leaving the derail open. Upon each morning it was the duty of a certain crew of the defendant to proceed north from Springfield and take from the various mine switches such cars as had been billed by the mine for transportation. On the morning of December 21st this switching crew proceeding north for that purpose, passed the north end of the mine switch about 7 o'clock, at which time the derail in the switch connection was still open. Some three hours thereafter the employes of the mining company started to drop two loaded coal cars down to the north end of the switch and discovered that one of the cars had a defective brake, whereupon they attached to it for the purpose of controlling it, another loaded car and started the two cars down the decline. The employe who was riding them then endeavored to slacken the speed by using the brake on the second car. While tightening the brake something suddenly gave way in the braking apparatus, and he lost control of both cars. He and a fellow employe immediately jumped

from the cars and endeavored to stop them by throwing chunks of coal and wood in front of them. This proved ineffectual and both cars, gaining in speed, continued down the switch track through the derailing device which was closed, out on to the main track of the railway where they collided with the approaching train. As the result of the collision one end of the mail car in which the plaintiff was employed was torn off, and plaintiff was thrown down and injured.

The evidence fails to disclose how the derailing device came to be closed at the time.

Inasmuch as such device the position of which was the proximate cause of the accident, was within the exclusive control of the appellant company, it is obvious that if, under the undisputed facts, appellee can properly be held under the law to have been a passenger, the rule *res ipsa loquitur* is applicable, and the burden of proof rests upon the appellant to show that the collision was not the result of any failure to exercise the degree of care owing by it to its passengers. When a passenger is injured by a collision, proof of the relation of passenger and carrier, of the collision and injury, if no contributory negligence on the part of the passenger appears, makes a *prima facie* case for the resulting damages and costs upon the common carrier. The *onus* of proving that the injury resulted from inevitable accident or some cause against which human prudence and foresight could not have provided, is on the carrier. Elgin, A. & S. T. Co. v. Wilson, 217 Ill. 47, and cases cited.

The printed argument of counsel for appellant is largely devoted to the proposition that the relation of passenger and carrier did not exist between the parties. Although the Supreme Court of Illinois has never directly decided whether or not a United States postal employe while engaged in the performance of his duties upon a railway train is a passenger and entitled to all rights as such as against the carrier, the question has been directly passed upon and the affirma-

tive held by the Appellate Court of the first district of this state, in Wabash R. Co. v. Jellison, 124 Ill. App. 652. The precise question is there presented and fully discussed. While the conclusions there reached are not as a matter of law binding upon this court, we believe the same to be amply supported by the decision of the Federal Courts and those of sister states cited and discussed in the opinion and are disposed to follow the same. The cases of Blank v. The I. C. R. R. Co., 182 Ill. 332, and C., R. I. & P. Ry. Co. v. Hamler, 215 Ill. 525, are not at variance with the rule laid down. In both cases contracts expressly exempting the carrier were involved.

Appellee being a passenger, under the rule *res ipsa loquitur* the burden was cast upon appellant to prove that it had exercised the highest degree of care consistent with the practical operation of its road to secure his safety. C. C. Ry. Co. v. Shaw, 220 Ill. 532. This it manifestly failed to do; on the contrary the failure to guard the main track by loading or guarding the derailing device was clearly shown and the liability of appellant for the injuries received by appellee conclusively established.

It is urged that the damages are excessive. The verdict returned by the jury assessed the damages at $6,000. Appellee thereupon entered a *remittitur* and judgment was rendered for $3,000. We are not satisfied after a careful consideration of the evidence that the amount awarded is so excessive as to warrant a reversal of the judgment. The testimony of appellee and three physicians tends to show that at the time he was injured he was about 44 years of age; that he had previously been in perfect health and had been in the government employ for sixteen years; that he received cuts and bruises about the face, head, leg and back; that five of his ribs were fractured, two of them being so sunk as to create a deep depression which yet existed; that he remained in bed at the hospital ten days, and at his home fifty days; that he

suffered great pain, lost much sleep and that he had not yet recovered from the shock to his nervous system; that his hearing was seriously and permanently impaired, his capacity for breathing weakened and a pressure caused on his heart and lungs so as to render him more susceptible to lung trouble.

The judgment of the Circuit Court is affirmed.

*Affirmed.*