# Mary Burgoyne, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 16,036.

1. PASSENGER AND CARRIER—*what establishes prima facie case of negligence.* In an action by a passenger against a carrier for hire to recover for personal injuries sustained, a *prima facie* case is established by proof of the relation, a collision while the relation existed and resulting injury and damages.

2. PASSENGER AND CARRIER—*care required of latter.* Carriers of passengers are held to the exercise of the highest degree of care for the safety of their passengers reasonably consistent with the practical operation of the road.

3. PASSENGER AND CARRIER—*contract between.* The contract between a carrier and passenger for hire is that the carrier will transport the passenger to his destination in safe and sound cars, equipped with all necessary and proper appliances, operated in a safe and proper manner and without injury.

4. PASSENGER AND CARRIER—*when presumption of negligence not overcome. Held,* under the evidence, that the presumption of negligence arising from the collision which resulted in the injury of a passenger was not overcome by the evidence adduced by the carrier to rebut such presumption.

5. VERDICTS—*when remittitur does not cure excessiveness.* If a verdict is so excessive as to force the court to the conclusion that it was the result of passion, prejudice or sympathy, a *remittitur* will not cure its vice.

6. VERDICTS—*when excessive, Held,* in an action on the case for personal injuries that a verdict for $6000, reduced by *remittitur* to $4000, was still excessive where the evidence showed as the only serious injury a wrench to the knee joint, resulting in confinement in bed for a few weeks, leaving synovitis of the knee which may or may not be permanent, but not resulting in any impairment of capacity to pursue usual employment, and where it further appeared that there was no proof of any loss of income or of any moneys expended for medical aid, etc.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed

upon *remittitur*. Opinion filed January 17, 1912. *Remittitur* filed January 23, 1912.

JOHN E. KEHOE and WATSON J. FERRY, for appellant.

JAMES C. McSHANE, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

The undisputed facts in this case are that appellant owns and operates a street car line on 31st street and also one on Halsted street in the City of Chicago. The cars running on Halsted street had the priority of way over cars running on 31st street. The cars running on 31st street were customarily stopped to discharge and receive passengers before they crossed Halsted street. On the evening of April 21, 1908, there was a car on each of these lines approaching the intersection of these two streets, the car on Halsted street was approaching from the south and the car on 31st street was approaching from the east. The car on Halsted street was a large double truck car and reached the intersection of these two lines just ahead of the car on 31st street. The car on 31st street was a smaller single truck car and did not stop as it approached the intersection, but ran against the Halsted street car with sufficient force, so that some of the windows in each of the cars were broken, and the cars were otherwise injured, and the front wheels of the 31st street car were carried from the rails some eight to twelve inches to the north by the motion of the Halsted street car. Appellee was a passenger for hire on the 31st street car, intending to alight from it when it should stop on the east side of Halsted street. As the car on which she was riding approached the usual place for discharging and receiving passengers on the east side of Halsted street, appellee, with other passengers intending to alight there, arose from their seats pre-

paratory to alighting. When the car collided, appellee was thrown to the floor of the car and was injured. The jury found the issues for appellee and assessed her damages at $6,000. A *remittitur* was entered for $2,000, and judgment was entered for $4,000 against appellant. Appellee's theory of the case is that the collision was caused either by the negligent operation of the 31st street car or by some defective condition of the appliances by which the car is supposed to be controlled, while appellant insists that the collision was an inevitable accident which no one could have foreseen or avoided.

Appellee, having made out a *prima facie* case by showing that she was a passenger for hire and that the car she was on was not stopped at the usual place for stopping, but collided with another car belonging to appellant, there crossing the track ahead of the car on which she was riding, and that she was thrown down and injured by the collision, was entitled to re-cover damages, unless the proof offered by appellant shows that the collision was not the result of any failure to exercise the degree of care due from it to its passengers. Carriers of passengers are held to the exercise of the highest degree of care for the safety of such passengers, reasonably consistent with the practical operation of the road. The contract between the carrier and a passenger for hire is that the carrier will transport the passenger to his destination in safe and sound cars, equipped with all necessary and proper appliances, operated in a safe and proper manner and without injury. "Where such a passenger is injured by a collision, proof of the relation of passenger and carrier, of the collision and the injury, if no contributory negligence on the part of the passenger appears, makes a *prima facie* case for resulting damages, and casts upon the common carrier the onus of proving that the injury resulted from inevitable

accident or from some cause against which human prudence and foresight could not have provided." Elgin, A. & S. Trac. Co. v. Wilson, 217 Ill. 47.

How the collision in the case at bar occurred, what caused it and whether it was the result of unavoidable accident or of some cause against which human prudence and foresight could not have provided, is a question of fact to be determined by the jury. Chicago City Ry. Co. v. Pural, 224 Ill. 324.

The substance of the testimony of the motorman on the 31st street car, a witness who was produced by appellant to show that the collision in question was an unavoidable accident, was that he knew he should stop his car before crossing Halsted street; that at about the place where the power was usually thrown off and the brakes applied to stop the car before crossing Halsted street he threw off the power and applied the brakes; that for some reason, he did not know what, the brakes did not work; that it seemed to him that the chain caught or something like that, as if the chain got a kink in it; that while the car slackened a little, it did not stop; that as soon as he found he could not stop the car with the brakes, he put on the reverse power; that when he did that the fuse blew out; that he might then have been thirty-five or forty feet east of Halsted street; that then there was nothing more he could do to stop the car, and it ran on "at not much speed" and collided with the Halsted street car. He further testified that if the brake chains caught or tangled it was because they were too loose; that if they had been in proper shape they could not tangle or kink, and as there is no evidence in the record in conflict with these last statements of the motorman, they must be considered correct. Brakes are attached to cars for the purpose of furnishing a means of stopping them when desired, and the reversing appliances are attached in part for the same

purpose, to be applied when the brakes are ineffective. The brakes and the reversing appliances were the only means by which this car could be stopped. Each of these means was successively employed by the motorman without effect, if his testimony is to be believed. It follows inevitably either that the motorman did not properly manage his car and the stopping devices to it, or that the stopping devices were defective either in original construction or for want of repair, and that the collision resulted from one of those causes. If the negligence of the motorman in managing the car was the cause of the accident, appellant is liable. If defective appliances was the cause, the presumption of negligence arising from the making of a *prima facie* case cannot be overcome, unless it appears from the evidence that appellant did not know of the defects and could not have known of them by the exercise of that high degree of care required of carriers for the safety of their passengers.

Aside from the testimony of the motorman, there is no evidence in the record to show whether the brakes or the reversing appliances were out of order when the collision occurred or not, nor whether they were out of order or in good, proper and safe condition when the car left the car barn, nor whether, if they were in good order when the car left the barn, they were likely to or could get out of order by proper use after the car left the barn and before the collision, nor whether the defect, if any, was one of original construction or resulted from lack of repair, nor whether a defective condition of the brake or brake chains or reversing appliances, if it existed, would be hidden and difficult of ascertainment or would be open and obvious to the most casual observer. Neither is there any evidence whatever of any inspection of the car by appellant at any time, while it was in its possession, nor that appellant had ever exercised any care what-

ever, much less the high degree of care required of carriers of passengers, to see to it that the car was in a safe condition and repair. The decided weight of the evidence tends to show that the motorman was mistaken as to where the car was when the fuse blew out, and that in fact it did not blow out until the instant the collision occurred. In fact, the evidence in the record is more significant for what it fails to show than for the light it throws on the question of due care on the part of appellant. In what way it tends to overcome the presumption of negligence arising from the *prima facie* case made by appellee, it is difficult to conceive. We think the jury were amply warranted in finding, as they did, that the collision was due to the negligence of appellant.

Appellant insists that the verdict is so excessive as to force the court to the conclusion that it was the result of passion, prejudice or sympathy; that when a jury is so influenced, a *remittitur* will not cure the vice, and that the case should be reversed for that reason. We are inclined to agree with appellant that the verdict of $6,000 was too high, and that the judgment of the court below for $4,000, after the *remittitur* was filed, was still excessive to the amount of $2,000. While appellee complains of some other bruises, the only serious injury shown by the evidence was a wrench to the knee joint resulting in confining her to her bed for a few weeks, and leaving her with synovitis of the knee which the doctors say may or may not be permanent, but which does not prevent her from pursuing her usual and former employment as housekeeper, and which her daughter says does not even leave a lameness, although there is a peculiarity in her walk. There is no proof of any loss of income, nor of any moneys expended for medical aid, nursing or medicines. Neither is there any claim for punitive damages. While we feel that the judgment is exces-

sive, we are not convinced that passion, prejudice or sympathy entered into the finding of the jury. While the question of the amount of damages that should be awarded in an action *ex delicto* is one of fact, it is one into which, particularly in cases where no special damages are proven, the element of judgment and opinion enters so largely that no fixed rule can be laid down by which the line between cases where the amount of the verdict is and where it is not evidence of the influence of improper motives can be determined, but where the right to recover something is clearly established, as it is in this case, the courts of this state are firmly committed to the practice of allowing *remittiturs* both in the trial and appellate courts. Sandy v. Lake Street El. R. R. Co., 235 Ill. 194, and numerous cases there cited.

If appellee will file a remittitur of $2,000 within ten days, the judgment will be affirmed for $2,000, otherwise it will be reversed and the cause remanded.

*Affirmed with remittitur.*

*Remittitur* filed and judgment affirmed January 23, 1912.