## Charles Durfee, by William Durfee, Appellee, v. City of Chicago, Appellant.

### Gen. No. 32,788.

Heard in the third division of this court for the first district at the June term, 1928. Opinion filed January 30, 1929.

Samuel A. Ettelson, Corporation Counsel, and William D. Saltiel, City Attorney, for appellant; Charles M. McDonnell, Assistant City Attorney, E. Marshall Amberg and Roy S. Gaskill, Assistant Corporation Counsel, of counsel.

Frank T. McDermott and J. W. Hallam, for appellee.

Mr. Justice Ryner delivered the opinion of the court.

The plaintiff, a minor, obtained a judgment for $5,000 against the defendant in the superior court of Cook county. The action was in tort to recover dam-

ages for personal injuries sustained by the plaintiff, caused by his coming in contact with certain electric light wires of high voltage. The wires extended through a hollow iron pole and constituted part of the lighting system maintained by the defendant, City of Chicago. The judgment was based upon the verdict of a jury. The defendant brings this appeal and contends that the evidence discloses that it was not guilty of negligence.

The accident happened on October 1, 1926, at about 6:30 o'clock in the evening. The plaintiff, then of the age of eight years, was playing with two other boys on the public sidewalk on East Chestnut Street in the City of Chicago. The sidewalk was wet and the plaintiff slipped and fell so that parts of his body came in contact with the wires and were severely burned. The iron pole, containing the wires, was about 10 or 12 feet in length and at the time of the accident was not standing upright but was bent over so that the top was about 3 feet from the edge of the sidewalk.

On the afternoon of the day before the accident some one backed a coal truck against the pole, bending it over so that it extended out into the street. The driver of the truck swung the pole around out of the street until it was parallel with the edge of the sidewalk and then went on his way. That evening at about six o'clock two employees in the electrical department of the defendant removed the globe and globe seat on the pole, which permitted the two wires inside to protrude from the end, and then bound the wires together with a brass screw connector and wound 8 or 10 layers of rubber tape around them. They testified that after they had taped the wires they put the globe seat back on so that the ends of the wires would not be exposed. It was an iron support for the globe and weighed about five pounds. One of them said that they attached it with three small thumb screws, provided for that pur-

pose, which they turned as far as possible with thumb and finger, and then he thought it likely that they used a pair of pliers, but that he did not remember what he did that particular time. A witness for the plaintiff testified that the globe seat was not replaced but that he placed it, together with the globe, in a near-by shed. After the wires had been taped the pole was left in the same position in which the two employees of the city found it. No barricade was placed around it and no watchman was stationed at the place. Apparently the defendant paid no further attention to the pole and wires until 24 hours later, when the accident happened.

At the time the plaintiff was injured the ends of the wires were protruding beyond the end of the pole a distance of 10 to 12 inches and sparks were coming from them. The globe seat was missing. This permitted the wires to protrude. If the defendant's employees, as they testified, replaced the seat at the time they taped the wires, then it must have been removed by some third person prior to the accident. There is no showing that the defendant had any knowledge of its removal prior to the time the plaintiff was injured. The two employees in the electrical department of the defendant testified that shortly after the accident they examined the wires, and found a "V" shaped cut in the tape just below the brass connector, which appeared to have been made by a sharp instrument of some kind, and that there were several small white spots on the surface of the friction tape which appeared to be burns.

Several witnesses for the defendant testified that the tape used was sufficient to completely insulate a wire carrying a voltage in excess of the amount carried by the wires in question; that before the accident the pole was not charged with electricity and that the insulation inside the pole was not defective. There was no contradiction of this testimony. The plaintiff was the

only witness who testified as to what part of the pole or wires he came in contact with. He said that as he fell his hand struck the wires. His testimony was corroborated by that of the witness who said he saw sparks coming from the exposed wires.

No complaint is made in the brief of the defendant in regard to any of the rulings or actions of the trial court in the reception or exclusion of evidence, or in the giving or refusing of instructions except that the court should have directed a verdict in favor of the defendant at the close of all of the evidence. In support of this contention it is urged that the proximate cause of the plaintiff's injuries was the cutting of the tape by an agency not under its control and that it had no notice, actual or constructive, that the insulation had been cut or damaged.

In the case of *Hausler v. Commonwealth Electric Co.*, 240 Ill. 201, the Supreme Court of this State said:

"Electricity is a silent, deadly and instantaneous force, and a person or company handling it is bound to know the dangers incident to its use in a public street or alley, and is bound to guard against accident by a degree of care commensurate with the danger incident to its use."

The same degree of care is required of a municipality. *Deming v. City of Chicago*, 321 Ill. 341. In the case of *Illinois Cent. R. Co. v. Siler*, 229 Ill. 390, the court said:

"In order to make a negligent act the proximate cause of an injury it is not necessary that the particular injury, and the particular manner of its occurrence, could reasonably have been foreseen."

The court also quoted, with approval, from the opinion in the case of *Atchison, T. & S. F. Ry. Co. v. Stanford*, 12 Kan. 354, as follows:

"Any number of causes and effects may intervene between the first wrongful cause and the final injurious

consequence, and if they are such as might with reasonable diligence have been foreseen, the last result, as well as the first and every intermediate result, is to be considered, in law, as the proximate result of the first wrong cause."

Applying the foregoing principles of law to the facts in the case we think that the questions whether the defendant was negligent and, if so, whether its negligence was the proximate cause of the plaintiff's injuries, were properly submitted to the jury. The defendant could easily have avoided the accident by barricading the pole, as it did after the accident, or by stationing a watchman at the place or by removing the old pole and installing a new one. The pole, bent over until it almost touched the sidewalk, would naturally attract the attention of passersby and afford a temptation to children and even older persons, mischievously or malevolently inclined, to remove the globe seat, if one there was, and to tamper with the insulation. The case is not unlike that of *Elgin, A. & S. Traction Co. v. Wilson,* 217 Ill. 47, where the court held that a street car company was not exempted from liability because of the tortious act of a boy in moving the lever controlling a switch, during the temporary absence of the employee in charge of it, saying:

"Whether the failure to have the switch appliances provided with locks of some character, or, in the absence of such lock, to have a guard to watch and see that the switch was not improperly thrown or turned, constituted actionable negligence, was properly submitted by the court to the jury."

For the foregoing reasons the judgment of the superior court of Cook county is affirmed.

*Affirmed.*

HOLDOM, P. J., and WILSON, J., concur.