JOHN PIAVA LIGERO *et ux vs.* RAFAEL C. MARTINS.

JULY 6, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This action of trespass on the case for negligence was brought to recover for the death of the plaintiffs' minor son. The case was heard by a justice of the Superior Court sitting without a jury. At the conclusion of the trial said justice rendered decision for the defendant. The case is here on plaintiffs' exception to said decision.

While the defendant was backing his truck, upon which plaintiffs' son was riding, out of a side street and across a main thoroughfare, the truck collided with a truck owned by Samuel and Louis Epstein, partners doing business as the National Sales Co., hereinafter called the Sales Co. As a result of the collision the plaintiffs' son received injuries from which he died.

The plaintiffs, father and mother of the deceased boy, made claims for damages against the Sales Co. and against the defendant Martins. Before the commencement of suit the Sales Co.—through their attorneys—paid the plaintiffs

$1,200, and the plaintiffs executed two instruments in favor of said company. The first was an ordinary covenant not to sue. The second was a covenant to indemnify and hold said company harmless against all claims arising from the death of said son. Both instruments were signed by the plaintiffs by their respective marks. After the signatures on the second instrument appears the following:

> "The foregoing agreement was translated by Manuel Piava Ligero to John Piava Ligero and Annunciacao Ligero who said they understood this instrument in detail, that they knew in signing it they were signing away their right to any further claim for the death therein referred to, that they were satisfied with the settlement, and that they signed it of their own free will.
>
> (Signed) Manuel Piava Ligero."

After execution these two instruments were delivered to the attorneys for the Sales Co. who in turn delivered to plaintiffs' attorney a draft for $1,200. On the face of the draft was written the following language:

> "In Settlement of Liability Stated Below.
> In full settlement of all claims against National Sales Co; for damages sustained on or about 11-25-27.
> Assured   National Sales Co.
> Policy No.
> MAL—2332."

On the reverse side of the draft was written a receipt and instructions as follows:

> "Receipt and Endorsement
> The Payee's Endorsement Constitutes An Acceptance of this Draft in Full Settlement of Liability Stated on Reverse Side.
> No other receipt required.
> Make all endorsements below."

The draft was drawn payable to the two plaintiffs or to their attorney. Said attorney indorsed the draft for collection. Thereafter the plaintiffs brought this suit for the benefit of themselves and all other heirs.

The trial justice found that the defendant was guilty of negligence but ruled that the documents executed in relation to the settlement with the Sales Co., together with the draft that was delivered to the plaintiffs and indorsed by their attorney, constituted a settlement in full and was therefore a good defense to the plaintiffs' action.

The defendant contends that the statement attached to the indemnity agreement is in effect a general release. It should be noted, however, that this statement was not signed by these plaintiffs and was merely a statement signed by the interpreter to the effect that he had read and explained the foregoing indemnity agreement to these plaintiffs. The defendant stresses also the fact that the draft for $1,200 delivered to these plaintiffs and their attorney, after the execution of the covenant not to sue and the indemnity agreement, contained the words "in full settlement of all claims against National Sales Co; for damages sustained on or about 11-25-27." This draft was not paid in full settlement for all damages sustained. The statement on the draft that it was in full settlement for all claims against the National Sales Co. for damages is entirely consistent with the intention expressed by the parties to effect an agreement between themselves that these plaintiffs would never sue the Sales Co.

While there is much conflict among the authorities, we think the more sensible rule, and the one supported by the weight of authority, is that the intention of the parties as expressed by their various agreements taken as a whole should be sought; and that isolated· sentences, which are not necessarily inconsistent with the general intention not to give a general release to all joint tort feasors, should not be unduly emphasized. 53 C. J. 1258; *Matheson* v. *O'Kane,* 211 Mass. 91; *Gilbert* v. *Finch,* 173 N. Y. 455; *Musolf* v.

*Duluth, Edison El. Co.*, 108 Minn. 369, 24 L. R. A., (n. s.) 451. See also *Chicago & A. R. Co.* v. *Averill*, 127 Ill. App. 275, affirmed 224 Ill. 516; *Robertson* v. *Trammell*, 37 Tex. Civ. App. 53, affirmed 98 Tex. 364; *Joyce* v. *Mass. Real Est. Co.*, 173 Minn. 310.

Neither the covenant not to sue nor the covenant to indemnify and hold harmless is a release. The language on the draft, standing by itself, might show a different intention; however, by two instruments under seal the plaintiffs and the Sales Co. carefully endeavored to express their understanding that liability was not released. It is undisputed that the Sales Co. paid the $1,200 for the two covenants and not in full settlement of damages arising from the death of the boy. We think that the language placed on the draft, considered in connection with the two instruments under seal, is insufficient to warrant a construction which the parties never intended.

The plaintiffs' exception is sustained and the case is remitted to the Superior Court for a new trial.

*Tillinghast, Morrissey & Flynn, M. Walter Flynn, Robert J. Conley*, for plaintiff.

*Fergus J. McOsker*, for defendant.