75  579
177s  110

# Illinois Central Railroad Company v. John L. Davenport.

1. RAILROADS—*Liability of Company for Act of Brakeman in Ejecting a Person from a Train.*—Although a person who has boarded a freight train may be a trespasser, that does not prevent a recovery against the railroad company for the act of a brakeman in ejecting him from the train while it is in motion, and without regard to the safety of his person, or the preservation of his life.

2. SAME—*Liability of Company for Acts Performed by Direction of the Conductor of a Train.*—The brakeman of a freight train, acting under orders from the conductor, forcibly ejected from the train a person who was riding thereon, and he was seriously injured. *Held*, that the conductor was a vice principal, and that the railroad company was liable for acts performed under his direction.

3. DAMAGES—*A Question for the Jury.*—When there is not a legal measure of damages, and when the damages are unliquidated and the suit is referred to the discretion of the jury, the court will not ordinarily interfere with the verdict. It is the peculiar province of the jury under appropriate instructions from the court, to decide such cases, and the law does not recognize in the court the power to substitute its own judgment for that of the jury.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898.

I. A. BUCKINGHAM, attorney for appellant.

MILLS BROTHERS, attorneys for appellee.

A carrier will be held to the same strict accountability for the negligence of its servants resulting in injury to a passenger who is lawfully and properly on a freight train as governs its liability for such negligence when the transportation is upon a train devoted to passenger service exclusively. New York C. & St. L. R. R. Co. v. Blumenthal, 160 Ill. 48, cited in Chicago & Alton R. R. Co. v. Arnol, 144 Ill. 261; Lake Erie & W. R. R. Co. v. Matthews, 41 N. E. Rep. 842; Chicago & A. R. R. Co. v. Flagg, 43 Ill. 364; Creed v. Pennsylvania R. R. Co., 86 Penn. St. 139 ; 27 Am. Reports, 693; Lucas v. Milwaukee & St. P. Ry. Co., 33 Wis. 41; 14 Am. Rep. 735.

It is also a well settled rule of law in this State that even though a person be wrongfully upon a train and thereby be considered a trespasser, if he is ejected by those in charge of the train in a wanton and willful manner, the company will even be liable for exemplary damages, and in such case it is immaterial whether the relation of carrier and passenger exists or not. In St. Louis, A. & T. H. R. R. Co. v. Reagan, 52 Ill. App. 488, the court say that it makes no difference whether appellee was a passenger or a trespasser; if he was wantonly and willfully expelled from the train while the same was in motion, the company would be liable. Chicago, B. & Q. R. R. Co. v. Mehlsack, 131 Ill. 61; West Chicago Street R. R. Co. v. Binder, 51 Ill. App. 420; Pennsylvania R. R. Co. v. Connell, 26 Ill. App. 594; North Chicago City Ry. Co. v. Gastka, 128 Ill. 613; Lake Shore & M. S. Ry. Co. v. Bodemer, 33 Ill. App. 479; Wabash R. R. Co. v. Jones, 163 Ill. 167.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

This action is brought by appellee to recover damages accruing to him on account of being forcibly and violently ejected from a freight train by the servants and employes of appellant, while attempting to ride from Maroa to Emery, stations on the line of appellant's road, on the 25th day of February, 1896.

The declaration contains two counts, in which appellee sets out his cause of action in substantially the same language. It is averred in the first count that appellee became a passenger on a certain train of appellant on said railroad to be carried from Maroa to Emery, and was legally and lawfully on such train, and it became the duty of appellant to carry appellee from Maroa to Emery. Appellant, however, disregarding its duty in this respect, by its agents and servants then in the management and control of such train unlawfully, forcibly, cruelly, wickedly, and while such train was going at a high rate of speed, to wit, at the rate of twenty miles an hour, forcibly ejected appellee from the train to and upon the ground with great force and violence,

while he was in the exercise of due care and diligence and lawfully on such train, by means whereof he received great and permanent injuries in and about his back, legs and arms, and was otherwise greatly bruised, hurt and wounded, and was obliged to and did spend and become liable for divers large sums of money in endeavoring to be cured of such injuries, and by means of the premises became sick, lame and disordered, and so remained for a long time, to wit, from thence hitherto, during all of which time he suffered great pain and was hindered from transacting and attending to his business, and was deprived of divers great gains which he would have otherwise made.

The case was heard with a jury that returned a verdict finding the appellant guilty and assessing appellee's damages at $2,000.

It appears from the evidence in this case, that the appellee and one Swift went to the station of Maroa on the line of appellant's road and purchased tickets for passage from that point to Emery, another station on appellant's road, a short distance south. As they received their tickets, a train was moving slowly past the station, and they asked the ticket agent if they could go to Emery on that train, and he advised them they could. The train being in motion, and they fearing lest the motion of the train might be too great when the caboose reached where they were, boarded an empty coal car opposite them, some eight or ten cars in front of the caboose, and started back toward the caboose over the empty coal cars, the ends of which were laid down. The station agent was mistaken; this was not the freight train that carried passengers. It only carried passengers that had tickets and a permit from the division superintendent to ride. While the freight train that carried passengers was due, it had not yet arrived. Of these facts appellee and Swift were ignorant. When they came to the second car from the caboose they met Hill coming from the caboose. He was the rear brakeman. He called them s— of b——s, and wanted to know what they were doing on this train. They exhibited to him their tickets and said the station

agent had sold them tickets and told them to get aboard this train. He called them liars and said the agent never told them that was the train, and told them they would have to get off the train. They replied if they were in the wrong, if he would stop the train they would get off. At this time Montag, the brakeman, came from the front end of the train onto the car where appellee, Swift and Hill were, and addressed Swift and appellee in a manner similar to what Hill had addressed them. He finally told Swift that he would smash him and called him a big s— of a b——, and that he would throw him off. He then took him by the collar and took him to the front end of the car. At this time Hill took charge of appellee, and took him to the rear end of the car, and ordered him to get off, giving him a shove. Appellee grabbed a brace on the side of the car and got his foot in the stirrup, and while holding there, Hill told him to get down from there, and struck his hand with a lump of coal and broke loose his hold, and whipped him around, and he then hit him on the head and he fell off, falling on his back a little to the right side, with his feet out from the track and his head striking one of the ties. He was knocked senseless, and remained in an unconscious condition until Swift, who had been forced off the train by Montag on the opposite side, came to him and lifted him up. At the time appellee was forced off the train, it was running at the rate of from ten to fifteen miles per hour. Although some of the foregoing statements are controverted, and the testimony is conflicting, yet in the main they are sustained by the weight of evidence, and support the verdict of the jury.

It is insisted by appellant, at the time appellee was ejected from the train he was a trespasser, and therefore can not recover. Even if he were a trespasser, that does not prevent a recovery, if he were wantonly, cruelly, and with more force than was necessary ejected from the train while it was in motion. He and Swift were both on this train by an honest mistake—by the misdirection of the station agent. When they were rudely and insolently asked why they

were on this train, they politely told Hill they had tickets. He replied they were liars, and called them vile and opprobrious epithets. After the brakeman, Montag, came upon the car, Hill seized appellee and shoved him off the train, inflicting upon him the very grave and serious injuries complained of. During this entire time the evidence fails to disclose any conduct or language on the part of appellee that was reprehensible or not genteel. When he was ordered to leave the train, he replied, to stop the train and he would get off. If the train had been stopped, he would have got off without the use of any violence. This is quite apparent from the evidence. The conduct of the brakeman, Hill, in ejecting appellee from appellant's train while it was in motion, and without regard to the safety of his person or the preservation of his life, was wanton and willful, and gives appellee a right of recovery, although he may have been a trespasser. North Chicago City Ry. Co. v. Gastka, 128 Ill. 613; Lake S. & M. S. Ry. Co. v. Bodemer, 33 Ill. App. 479; St. Louis, A. & T. H. R. R. Co. v. Reagan, 52 Ill. App. 488; Chicago, M. & St. P. Ry. Co. v. Doherty, 53 Ill. App. 282.

It is urged that the brakemen, in putting these men off appellant's train, were not acting within the scope of their employment, and consequently the appellant railroad company would not be liable for the acts of the brakemen in ejecting these men from the train. It is not necessary to enter into a discussion of the question whether the brakemen were not impliedly clothed with authority from the nature and character of their employment, as the proof shows the conductor ordered Montag, the forward brakeman, to go back and "unload them fellows." He went back, and with the assistance of Hill, they put appellee and Swift off the train. There is no question but he was vested with this authority. He stood for the railroad company. He was the vice-principal, and as he had the authority, he had the power to call others to his assistance, as he did in this case, and appellant would be liable for his acts.

It is insisted on behalf of the appellant that there is a

variance between the proof and the allegations of appellee's declaration; that it is alleged in the declaration that the train was running at a high rate of speed, to wit, at the rate of twenty miles an hour; and the proof shows that the rate the train was running was at from twelve to fifteen miles per hour, and this variance was fatal. The rate per hour the train was running was pleaded under a *videlicit.* " Where a party does not mean to be concluded by a precise sum or day stated, he ought to plead it under a *videlicit.* For if he do not, he will be bound to prove the exact sum or date laid." 1 Chitty's Pl. The rate of speed per hour the train was running was not the material thing, but the fact that the train was in motion when appellee was ejected from the train. This objection is not well taken.

Complaint is made that the damages are excessive in this case. If the evidence for the appellee is to be taken as true, this is a case in which a jury would be justified in awarding exemplary or punitive damages. In the former part of this opinion reference has been made to the vile epithets and indignities that were heaped upon him by the brakeman, and how ruthlessly he was ejected from the train. That he received severe injuries, both external and internal, and suffered great pain, stands uncontradicted. From the verdict of the jury it is apparent the jury found these injuries were wantonly, recklessly and willfully inflicted.

" When there is not a legal measure of damages, and when the damages are unliquidated, and the suit is referred to the discretion of the jury, the court will not ordinarily interfere with the verdict. It is the peculiar province of the jury, under appropriate instructions from the court, to decide such cases, and the law does not recognize in the court the power to substitute its own judgment for that of the jury." Sutherland on Damages, Vol. 1, p. 810; Chicago & A. R. R. Co. v. Fisher, 38 Ill. App. 33; Illinois C. R. R. Co. v. Simmons, 38 Ill. 242; Pennsylvania R. R. Co. v. Connell, 26 Ill. App. 594.

It is claimed that error was committed in the giving of

the instructions on behalf of appellee.    While these instructions may not be entirely free from criticism, this court does not think they are tainted with prejudicial error.

The judgment of the Circuit Court in the opinion of this court should be affirmed.