## Louis J. Hanchett v. Ernest Haas.

### Gen. No. 12,044.

1. INSTRUCTIONS—*when refusal of proper, will not reverse.* The refusal of proper instructions will not reverse where it appears that substantial justice between the parties has been done.

2. INSTRUCTIONS—*when, upon credibility of witnesses, proper.* The phrases "wilfully and corruptly testifying falsely" and "wilfully or corruptly testifying falsely," used in an instruction upon the question of the credibility of witnesses are identical and the use of either of them is proper.

3. NEGLIGENCE—*what incompetent upon question of.* It is not proper to permit one who has been accused of negligence in handling his vehicle to testify that he was an expert driver of horses and had never before been accused of negligence.

4. JURY—*what may take upon retirement.* The jury may upon their retirement be permitted to take with them the amended declaration filed in the cause.

5. VERDICT—*when not disturbed as excessive.* Merely because the trial judge suggested to appellant's counsel that if he would agree to pay a specified sum he, the judge, would compel a *remittitur* of a particular amount, does not require that the Appellate Court should reverse the judgment as excessive. It must appear from the record that such judgment is excessive to justify a reversal upon that ground.

6. VERDICT—*when not excessive.* A verdict of $2,000 held not excessive under the particular evidence in this case, in an action instituted for the benefit of a minor of the age of about 14 years.

7. INJURY—*what competent upon question of.* The testimony of a physician upon the condition in which he found the plaintiff several months after the accident in question may be competent in connection with other testimony in the cause.

8. HYPOTHETICAL QUESTION—*when form of, proper.* It is proper to inquire as to the opinion of an expert formed on an assumption that the testimony of a single witness which he has heard in its entirety during the trial is truthful.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed October 16, 1905.

ALDEN, LATHAM & YOUNG, for appellant.

THEODORE G. CASE and JOHN T. MURRAY, for appellee;
A. W. BROWNE, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

Appellee (the plaintiff below) recovered judgment against
the appellant (the defendant below) on the verdict of a jury
for $2,000. From this judgment the defendant appealed to
this court, and alleges and argues here that the judgment was
excessive and contrary to the evidence, that the court below
erred in the admission and exclusion of evidence, and that it
erred in allowing the declaration in the cause to be taken
into the jury room.

It appears by the bill of exceptions that in a colloquy be-
tween the counsel for the respective parties and· the court,
after the motion for a new trial had been argued, the trial
judge. remarked that he thought the verdict was too large,
but that he did not want to set it aside. Further sugges-
tions from each side were made, and the judge said to the
defendant's counsel, "If you will pay $1,500 and not appeal
the case, I will compel a *remittitur* of $500 ; otherwise I will
overrule the motion ·for a new trial." The defendant not
agreeing to pay $1,500 without appealing, the court then de-
nied the new trial.

A point made by the appellant in his briefs is that "it
was error for the trial court to require the appellant to agree
not to appeal the case as a condition precedent to compelling
a *remittitur*.   *   *   *   The trial court   *   *   *   should
have compelled the *remittitur* absolutely or sustained appel-
lant's motion for a new trial."

Assuming that the course they indicated was the only
proper one for the trial judge to have pursued if he believed
the verdict excessive, we see nothing more for us to review
in his action than is presented in the first point of appel-
lant's argument; that is, that a new trial should have been
granted because the verdict was excessive.

It undoubtedly is true, as this·court said in Chicago and

Hanchett v. Haas.

North Western Ry. Co. v. Kane, 70 Ill. App., 676, that the trial judge is generally in far better position than an appellate court to pass upon the question of the amount of damages, and it may be that the assertion of the trial judge, preserved in the record, that he viewed the verdict as excessive, should have weight to confirm an opinion of this court to the same effect, formed from the evidence, as it seems to have done in West Chicago Street Railway Co. v. Wheeler, 73 Ill. App., 368; but if the duty of the trial judge, definitely and unconditionally to pass on the alleged excessiveness of the damages, is not performed, we not only "prefer," but feel obliged, as we did in C. & N. W. Ry. Co. v. Kane, "to decide the point on the evidence in the record" and not on "the statements of the trial judge."

The action was for personal injuries received by the plaintiff, as it was alleged, by the defendant negligently driving a buggy into him and knocking him over. The defendant denied any negligence on his part, and seems to have insisted that the plaintiff, being a foot passenger on the street on his way from one street car to a connecting one, negligently ran into the buggy while it was standing still. There was, however, evidence offered on behalf of the plaintiff amply sufficient, if believed as against the conflicting testimony, to establish the following state of facts: That the plaintiff, a boy about fourteen years old, alighted at the corner of Indiana avenue from a street car going west on 43rd street in Chicago, at about six o'clock in the evening of April 3, 1900; that he was a delivery boy in the employ of a shoe house, and was then carrying two or three packages of shoes; that he walked northwesterly towards the sidewalk at the northeast corner of the two streets, intending to take the car coming north on Indiana avenue; that he was struck by a horse attached to a buggy, which was being driven by the defendant at a high rate of speed eastward on 43rd street; that the collision was between the breast of the horse and the head of the boy; that the blow knocked him down and inflicted upon him serious injuries.

Counsel for appellant say that the preponderance of the

evidence showed both that appellant was not guilty of negligence, and that the defendant was so guilty, and that either proposition is fatal to appellee's case.   We do not think, however, that there was any such clear preponderance of evidence against the testimony we have outlined, as to warrant us in disturbing the verdict of the jury.   A conflict of testimony there undoubtedly was, but it was for the jury to pass on the credibility of the witnesses and the suggestion that the street car men were interested in fixing a liability for the accident on defendant, lacks sufficient force to justify us in declaring that the jury ought to have paid no attention to their sworn statements.

Nor do we find anything to require a reversal of this judgment in the instructions given that are complained of, nor in the refusal to give those at the request of appellant which were rejected.

We still regard the language in the third instruction "obnoxious to criticism," as we said in O'Donnell, Adm'r v. The Armour Curled Hair Works, 111 App., 516, but in that case we simply declined to reverse a judgment because the instruction had been refused, and quoted, moreover, the language of the Supreme Court, that although the court might have refused proper instructions, yet if the record showed that substantial justice had been done, a verdict ought not to be disturbed.   Since then the Supreme Court has refused to reverse a judgment on account of this instruction, and has expressly declared that it was substantially correct and had been approved by that court.   Chicago City Ry. Co. v. Bundy, 210 Ill., 48.

To instruction ten we see no objection.   Its doctrine has been approved in Chicago City Railway Co. v. Allen, 169 Ill., 290; North Chicago Street R. R. Co. v. Fitzgibbons, 79 Ill. App., 636; Perkins v. Knisely, 204 Ill., 277.

The distinction between "wilfully and corruptly testifying falsely" and "wilfully or corruptly testifying falsely" is difficult to make.   If one commits wilful perjury, he necessarily must do it corruptly.

Nor do we see any valid objection to instructions six and

twelve.    Instructions IX, X and XII, which were refused, were sufficiently covered by those that were given, and the propriety of giving III and IV would have been at least doubtful for various reasons.    We do not think that the jury were left without sufficient instruction concerning the necessity of proof of the defendant's negligence and the freedom of plaintiff from negligence contributing to the accident.

Appellant complains that he was refused permission to testify that he was an expert driver of horses, and had never before been accused of negligence in driving injurious to any body.    The ruling of the trial judge that this testimony was immaterial, can hardly be seriously urged as erroneous.

It is also claimed that it was error to allow the amended declaration to be taken by the jury into the jury room.    The Supreme Court has said that it is the general practice to allow the jury to take the pleadings into the jury room when requested by either party, and that there is no objection to it. City of East Dubuque v. Burhyte, 173 Ill., 556.

There is left for discussion only the point, which is strenuously insisted on by appellant, that the damages are excessive, and in connection therewith the claim that improper testimony was admitted from the medical experts called by the plaintiff.    We will consider them together.

As before noted, an opinion of the trial judge, on which he refused to act, cannot properly help us in answering the questions involved in these objections of appellant to the judgment.    We must consider the evidence submitted to the jury on which they, judging of its force and credibility, acted.

The plaintiff himself testified that after he was knocked down he was helped to the sidewalk and found that one of his teeth was knocked out, that he took an Indiana avenue car going north at 43d street, changed to a 35th street car, went west to Lowe avenue and from the corner of Lowe avenue and 35th street walked to his home at the corner of Lowe avenue and 33rd street, and went immediately to bed. Other testimony concerning the immediate effect of the accident was that the boy when assisted to his feet was bleed-

ing at the mouth, that he was crying and holding his head
down, and had one tooth in his hand. From this and from
testimony that appellee then told appellant that he was not
hurt except in losing a tooth, and that no physician was
called to attend his alleged injuries while he was laid up at
home from them, counsel for appellant argue that the only
damage sustained by the appellee was the loss of a tooth,
and that the verdict is excessive. But this evidence so relied
on is not all that appears in the record. It appears from the
testimony of the plaintiff himself that when he got home his
mouth was sore and his teeth loose, that he felt weak, and
that his right side pained him, and by the next day the small
of his back also; that he was laid up at home three or four
weeks—how much of the time in bed he does not remember.
He also swears that when he went back to work after three
or four weeks, he did not feel as well as he did before he
was hurt, and has had frequent pains in his back and side
following any unusual exertion, although he never had such
pains before the accident. He testified that following the
accident and the blow on his mouth, he was obliged to have
four back teeth taken out because of the pain incident to the
disturbance of the fillings.

The mother of the boy testified that when he came home
he was very pale and his mouth was swollen and his side
blue; that she put him to bed, where he stayed for a week;
that for four weeks he was at home, and she treated his back
with liniments every day; that he was a sound, healthy boy
before the accident, and had no drooping of the shoulders;
that since the accident he has been frequently sick and had
not been in good health, losing time from his work in conse-
quence.

His father testified that before this accident there was no
droop in the boy's shoulder and nothing the matter with it,
but that now there is such a droop, and that he was in poor
health from the accident in April until November, 1903;
that during that period he could work but a part of the time;
that in November he was very ill and a Dr. Guillaume was

called in and treated him, but that he remained ill and confined to his house for months.

Then Dr. Guillaume testified that when he examined the boy at the request of his father, several months after the accident, he found a curvature of the spine, a wasting of the muscles, and a drooping of the shoulder, and that "assuming that a boy was run down by a horse on the ground, that after he got home a few minutes afterward, he had a pain in his side and found that he was badly hurt in the mouth, and the next day discovered that he had a pain in the small of his back," he should attribute such a condition as was disclosed by his examination of the plaintiff to the injuries received.

Another physician of experience—introduced as a medical expert by the plaintiff—Dr. Stuart Johnstone—testified that a year and a half after the accident he examined the plaintiff at the request of his counsel, and found that he had lost an upper right incisor tooth, that he drooped in the right shoulder, an inch and a half lower on the right shoulder than the corresponding shoulder; that he had a curvature of the spine and that his muscular development on the right chest and back was less than on the corresponding side.    He further testified that he had heard the plaintiff's entire testimony in this cause, and that assuming it to be true, he attributed the condition in which he found him to the injury sustained as described by him, and that the condition was a permanent one.

There is in this testimony, if it was properly admitted and was believed by the jury, quite enough to justify a verdict for $2,000.    Although the trial judge, on the motion for a new trial, expressed his disbelief in the doctor's testimony, and said that he thought the boy had always been delicate and sickly, there is no evidence in the record to this effect, and none was offered.    We agree with the learned judge that the question of credibility was "for the jury to determine."

The only question remaining, therefore, is whether the evidence above detailed was properly admitted.    Appellant

insists that the physicians should not have been allowed to testify as to the condition they found the plaintiff in so long after the accident. We do not think the court was in error in admitting this evidence. By itself it proved nothing, but in connection with the testimony of the plaintiff and of his father and mother, and with the expert testimony of the same doctors as to their opinion of its cause, it was both competent and material to the issues raised by the pleadings. Ill. Steel Co. v. Delac, 201 Ill., 150; West Chicago St. Ry. Co. v. Dougherty, 209 Ill., 244; Gifford v. People, 148 Ill., 173.

Nor do we think the hypothetical questions put to these physicians as experts were inadmissible or improper.

The opinion in L. N. A. & C. Ry. Co. v. Shires, 108 Ill., 617, cited by appellant, does not lay down any rule under which they could be so held. The question to an expert which in that case was held properly excluded, was one which the court said "did not call for his opinion on the testimony of Dr. Tillotson" (another witness), as given on the trial, but on "statements as well made" (by Dr. Tillotson to him) "on the previous day." Of course the court held that a medical expert had no right to testify to an opinion formed upon information derived from private conversations with a witness. But to inquire of an expert his opinion, formed on an assumption that the testimony of a single witness, which he has heard in its entirety during the trial, is truthful, is allowable. Wright v. Hardy, 22 Wis., 334; Rogers on Expert Testimony, sec. 28.

We do not think that there was any error in the admission of those parts of the testimony of the father and mother of the plaintiff which are complained of. The statement of the father as to "curvature of the spine" was stricken out on the motion of the defendant.

We do not agree with counsel for appellant, that the remarks of counsel for the appellee in their briefs, concerning the argument of appellant in relation to the amount of damages, is tantamount to an admission that $2,000 is an excessive verdict, and giving due consideration to the action of the jury and to their evident decision on the credibility

and weight of the testimony, we see no justification for interfering with that verdict.

The judgment of the Superior Court is affirmed.

*Affirmed.*