# City of Chicago v. Kate Didier.

## Gen. No. 12,998.

1. VERDICT—*when not set aside.* The Appellate Court is not at liberty to invade the province of the jury in determining the credibility of the witnesses and the weight and force to be credited to their testimony, and unless the evidence in a cause is so manifestly against the weight of the evidence that such court can say that the verdict was the offspring of passion and prejudice and not of due deliberation in the actual solution of the facts as demonstrated by the proofs, the finding of the jury is a finality.

2. VERDICT—*when will not be set aside for excessiveness.* Notwithstanding the Appellate Court might have been better satisfied with a smaller verdict, yet it will not reverse a cause for an excessive assessment unless it plainly appears that the amount of the verdict was the result of passion or prejudice.

3. VERDICT—*when not excessive.* A verdict of $11,000 is held not excessive were it appears that the plaintiff, prior to the injury, was a strong, vigorous, healthy woman, thirty-seven years of age, and free from the ailments which she suffered subsequent to the accident, and where by reason of the accident she suffered a miscarriage, with violent and profuse hemorrhages, with injury to the pelvic organs necessitating a major surgical operation and where an additional operation became necessary and by virtue of the accident she was rendered a permanent and hopeless invalid.

4. INCOMPETENT EVIDENCE—*when offer to introduce not ground for reversal.* An offer to introduce evidence clearly incompetent is not ground for reversal where such offer was provoked by the attitude and statements of the complaining counsel.

5. OBJECTIONS—*when must be specific.* A general objection to a question is insufficient where the objection could be obviated if made specific.

6. MOTION TO STRIKE—*when essential to review.* An answer not responsive to a question cannot be successfully urged as error, however improper such question in fact may be, where no motion was made to strike out such unresponsive answer.

7. CROSS-EXAMINATION—*when question improper upon.* A question upon cross-examination is improper which assumes that the witness has testified to a particular fact when he has not in fact testified to such fact.

8. PERSONAL INJURIES—*when attending physician may give opinion as to cause of.* An attending physican may properly be permitted to give his opinion as to the cause of personal injuries

City of Chicago v. Didier.

complained of where he has sufficient personal knowledge of such injuries.

9.. PERSONAL INJURIES—*when medical expert may give opinion as to cause of.* A medical expert may properly be permitted to give his opinion as to the cause of personal injuries complained of, predicated upon an examination made by him and upon facts hypothetically stated to him or upon evidence heard by him in open court and assumed for the purpose of such opinion to be true.

10. MEDICAL EXPERT—*proper mode of examination where opinion as to cause of personal injuries is sought.* The proper mode of examination in such case is to state hypothetically the facts which the evidence tends to prove and call for the physician's opinion on the facts stated as to what caused the conditions described in the hypothetical question—not what might have caused them.

Action on the case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed February 7, 1907.

JOHN F. SMULSKI, City Attorney, for appellant; JOSEPH B. DAVID and EDWARD C. FITCH, of counsel.

O'BRIEN & McKINLEY, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an action on the case for personal injuries suffered by appellee in falling through a defective sidewalk on LaSalle street between Thirty-eighth and Thirty-ninth streets, Chicago, on September 10, 1901. A trial before the Superior Court and a jury resulted in a verdict and judgment of $11,000. Appellant preserved the usual exceptions to the actions of the court resulting in the judgment. These exceptions call for a review of the errors assigned in the record, in an attempt to reverse which judgment this appeal is prosecuted.

The City of Chicago does not deny the negligence charged against it, nor dispute its liability for the injury resulting to appellee from its negligent maintenance of the defective sidewalk in question, nor the

further fact that appellee was injured as a result of
the negligence of the city, and her fall through a hole
in the sidewalk at the place alleged. The city prof-
fered no witness as to the happening of the accident
or the condition of the sidewalk at the place of the
accident; neither did it offer any medical testimony,
expert or otherwise. The city's legal representative
in his closing argument to the jury conceded the lia-
bility of the city to appellee in these words (R. p.
340): "I admit the City of Chicago is liable in this
case." The challenge here is restricted to the amount
of the recovery. It will only be necessary, therefore,
to pass upon so much of the record pertinent to meet
and dispose of the contention thus presented. It is
encompassed within the following reasons assigned
and argued by appellant as causes for a reversal, viz.:

That the trial court permitted, over the objection
and exception of appellant, certain medical witnesses
for appellee in giving their testimony to usurp the
function of the jury in testifying that the accident
was the cause of appellee's condition, and in permit-
ting two of the medical witnesses to answer hypothet-
ical questions, basing their opinions on the testimony
of other witnesses heard by them in court upon the
trial. Also in allowing immaterial matters alleged to
be foreign to the issues to be introduced by appellee,
and in limiting cross-examination of appellee's wit-
nesses; and that the recovery is excessive.

The injuries suffered by appellee, according to her
own testimony and that of her lay and medical wit-
nesses, were of a very serious and permanent charac-
ter. As a preliminary symptom indicative of the se-
verity of her injuries, it appears in the proof that she
was rendered unconscious and remained so for nearly
two hours succeeding the fall. One of her legs was
crippled beyond repair; that a miscarriage resulted
from the fall, she being pregnant at the time; and
that other painful and permanent internal injuries
flowed from the fall; that she is permanently in-

valided, and from being a strong and robustly healthy woman before the accident, she in consequence of it is without health and suffering constantly, a subject for surgical operations, the necessity for another of which is said to be manifest from her condition at the time of the trial. Four physicians gave testimony in support of the condition of appellee, and many relatives and neighbors gave evidence tending to indicate such injuries were suffered by appellee as the proximate cause of the fall, of which some were eye witnesses. To meet these proofs the city called several witnesses in an attempt to prove the claimed injuries were greatly magnified, and that the injury to the knee admittedly sustained by appellee as a consequence of the fall was not permanent but temporary and had yielded to treatment and the injured member was fully restored to its normal condition; that appellee was not pregnant at the time of the accident, and consequently did not suffer a miscarriage as a result thereof, but the fact that appellee, after the fall, had hemorrhages of her womb, of much severity, also falling of this organ, and that it protruded through the vagina, necessitating a major operation medically termed "laparotomy," in the making of which operation an incision was made through the abdomen and the womb raised and sewed to the abdominal wall, serious as they are, and controlling as they must be, if true, remain uncontradicted.

The witnesses of appellant testified mainly as to the appearance and actions of appellee, which, it is insisted, is inconsistent with the existence of the serious injuries claimed. It is not seriously disputed that the knowledge of these witnesses was at the most superficial, and their opportunities of seeing and observing appellee, her movements and conduct somewhat limited, and it is plain that some of the testimony was tinged with animus and ill-feeling toward appellee. Some of the ill-will existing between appellee and some of the witnesses resulted in a police

court hearing. What the result of such hearing was is not germane here. It is enough to know of its existence as an influence which might be gathered from the appearance and manner of testifying of these witnesses, whether they evidenced any continued feeling or ill-will developed temper seemingly antagonistic to appellee while upon the witness stand. These were all matters peculiarly within the province of the jury to solve as a factor in their admeasurement of damages. The question is not, who was right in the differences between appellee and any witness, but whether there was any cause for prejudice or hostility, and if so, was it manifest in any way from the actions of any such witness in the presence of the jury while upon the witness stand. The trial judge ruled correctly in refusing to allow an investigation of these collateral and in law impertinent matters. If we are not at liberty to invade the province of the jury in determining the credibility of the witnesses and the weight and force to be accorded their testimony, as we certainly are not, then, unless the proof is so manifestly against the weight of the evidence that we can say the verdict was the offspring of prejudice and passion, and not of due deliberation, in a calm solution of the facts as demonstrated by the proofs, the finding of the jury is a finality on this disputed question and contrariety of evidence, unless other errors were committed in rulings upon evidence, or in the giving of instructions by the trial judge, which necessitates a reversal and a consequent new trial. It was a matter fairly before the jury as to which of the conflicting stories they would give credence—whether to the medical men and other witnesses of appellee testifying as to appellee's injuries or to the witnesses of appellant. A careful and somewhat critical examination of this evidence impels us to concur with the jury's solution of the conflict. The position of appellant in relation to the womb troubles from which appellee suffered is that they were in no way attribu-

table to the accident as a proximate cause, but that such proximate cause is traceable to a laceration of the cervix, which occurred at one of the accouchements with the several children of which appellee had been previously delivered. Such position is apparently untenable in the light of the indisputable evidence on this subject. The laceration had been healed so long before the accident as to inhibit its forming a prognosis in diagnosing 'this branch of appellee's ailments, is the trend of all the testimony.

Again, counsel seek to cast a doubt upon the uncontroverted fact of the pregnancy of appellee at the time of her fall, based upon the circumstance that for eight years she had not experienced maternity, although living with her husband all this time, she in good health and lacking proof to the contrary, he, presumably, in like condition. While a great deal of argument has been indulged by appellant in an attempt to convince this court of the soundness of this contention, we are unable to see its force or feel warranted in conceding that such circumstance casts any suspicion or doubt as to appellee's pregnancy at the time of the accident. She has deliberately sworn that she was pregnant at the time, and she is the best witness and had the most exclusive evidence of that fact within her own knowledge, and she is corroborated by medical attendants who treated her, and from such treatment observed that the condition of appellee was reconcilable with that fact. Nor are we able to say, either from the evidence or general knowledge or statistics on this subject, that such a lapse of time between pregnancies even incites suspicion as to the truth of appellee's statement. Woman in her varying moods of mind and nature is not infrequently uncertain in her periods of childbirth. But attention is directed to the fact that Dr. Hipp was unwilling to swear positively that appellee was pregnant when he examined her after the accident; yet he testified as to existent conditions in appellee which strongly

tend to sustain her claim of pregnancy. In the absence of any countervailing testimony it conclusively establishes the claim of appellee.

Appellant resisted an offer of appellee, entirely unnecessary, we think, to prove her husband had been ill part of the time during her eight years of barrenness, and assign this offer as such prejudical error as to demand a reversal of the judgment. It is quite evident such offer was provoked by the attitude and statements of the city's counsel, and while it should not have been made, the ruling of the court sufficiently safeguarded appellant's rights, and it cannot now be heard to complain. We cannot say, in the light of all the evidence, that such offer in any way tended to affect the jury in their deliberations to the injury of appellant, and we are in full accord with counsel for the city, when he says, on page 58 of its brief, that the effect of this reference to the husband upon the jury is, "purely conjectural."

Appellant urges many objections to the introduction of evidence and to the exclusion of evidence tendered, and to a limitation of cross-examination of some of appellee's witnesses, but a close examination of the record fails to disclose any material departure from legal precedent by the trial court in this regard. Thus a general objection to a question is insufficient, where the objection could be obviated if made specifically. C. & E. I. Ry. v. Wallace, 202 Ill. 129. Objections not urged in the trial court will not be heeded in a court of review. The necessity of a specific objection and the rule governing is well stated in Stone v. Great Western Oil Co., 41 Ill. 85. "It has been so often held by this court that objection to evidence must be specific, that it has become the doctrine of this court. The rule is that the party making the objections must point out specifically those insisted on and thereby put the adverse party on his guard and afford him an opportunity to obviate them." C. & E. I. Ry. Co. v. Wallace, *supra*.

It is likewise the rule that objections not made in the trial court will not be heeded on review. Answer not responsive to the question cannot be successfully urged as error, however improper such answer in fact may be, where no motion was made to strike out such unresponsive answer. Neither will an objection other than the one made in the trial court be considered on review. Ry. Co. v. Wilson, 217 Ill. 47.

As illustrative of a condition oft repeated in this record, operating to waive the right to question the correctness of the court's ruling on the substantive question, is the following:

"Q. Had you an opinion as to the cause of the hemorrhage?

MR. DAVID: I object.

THE COURT: You may answer.

Exception by counsel for defendant.

A. Yes, sir.

Q. What, in your opinion, is the cause of the hemorrhage? A. The accident." (R. p. 188.)

It will be observed that the objection to the first question was aimless. No reason, specific or general, assigned, but if the objection had been sufficient, it is unimportant for the substance of the inquiry is contained in the succeeding question and answer, to which no objection of any character was made. The right now to urge an objection does not exist. Hunter v. Third Ave. R. Co., 46 N. Y. Sup. 1010; Chicago City Ry. Co. v. Bundy, 210 Ill. 39.

The complaint of limitation of appellant in cross-examination we do not think is well taken. While a wide latitude is allowed in cross-examination, yet a large discretion is reposed in the trial court in limiting the range of such cross-examination. Spohr v. City of Chicago, 206 Ill. 441. This discretion, it is true, must be reasonable. The record fails to disclose any unreasonable limitiation in this regard.

The specific question which it is insisted is subject to the objection urged is (R. p. 71-72) on cross-examination of Dr. Hipp:

"Q. The hemorrhage that you found and the dilation of the cervix both can be attributed to womb trouble, caused by childbirth, bearing a certain number of children, or difficulty with the womb in bearing children?"

To this an objection was sustained, and we think properly. It assumed that the doctor had testified to a dilation of appellee's womb. He had not so testified, and consequently the question was improper and erroneous in its assumption of a dilation of appellee's womb being present when the doctor examined that organ. Without this unwarranted assumption an answer to the question would have been permissible. While the abstract does not disclose the fact, an examintion of the record does, that the question was abandoned by counsel for appellant, and, while an objection to the succeeding question was sustained, yet the information properly ascertainable by cross questioning was obtained in a subsequent cross question answered without objection. We find no such limitation in cross-examination calling for any remedial action of this court.

The witness of appellant, Lillian Schenk, testified on cross-examination that she was sometimes known as Mrs. Nieland, this against the objection of appellant. We see nothing worthy of criticism in this ruling, as from a remark of the court we judge she had been referred to by both names. She was then asked if she did not say to appellee, "I will fix you, you Dutch damn fool," and she answered "No." To this no objection was made. The next question was certainly directed to an immaterial inquiry, and an objection to it was properly sustained. While the question was uncalled for, the ruling of the court was a complete curative of any ill effect its projection into the case may have had upon the jury. Appellant's counsel, however, accentuated its force and magnified its importance by a discussion of the matter in the presence of the jury after it had been disposed

City of Chicago v. Didier.

of by the court favorably to appellant. If any impression was made upon the jury detrimental to appellant, it is attributable to the subsequent remarks of its counsel, and not to the question itself. This objection affords no reason, in itself, for a reversal.

There is a sharp conflict between counsel as to the rule governing the admission of medical testimony, and the function of hypothetical testimony. There were two classes of physicians who gave testimony for appellee, none being called on the part of appellant, viz., attending physicians and those testifying hypothetically as experts. The *gravamen* of the complaint rests in the insistence that it was erroneous to permit the physicians to base their opinions of the cause of the ailments from which appellee claimed to have suffered, and from which she was still suffering, as she claimed, at the time of the trial, based upon the testimony of witnesses which these medical men had heard in court upon the trial. These objections are more particularly directed to the experts, Doctors O'Neill and Kerber. As to the attending physicians, Doctors Hipp and Neilsen, the objection is that their testimony as to the cause of appellee's injuries was based partly upon the testimony of witnesses heard by them on the trial, and partly upon their examination and treatment of appellee. It is claimed that permitting these witnesses to testify in this manner was an invasion of the prerogative of the jury, whose sole function it was to determine questions of fact. These objections mainly spring from the following questions: To Dr. Kerber (R. p. 238): "Taking the same testimony that was given by the plaintiff as to how the accident in question in this case happened, and assuming the truth of it, combined with the objective results of your examination, what would you say was the cause of the uterine and pelvic conditions you have testified to?" And again (R. p. 24): "Taking the testimony of the plaintiff and assuming the truth of it, combining it with the

objective condition you discovered on your examination which you have testified to to-day, have you an opinion as to whether the condition of the uterus and pelvic organs can be cured?" Dr. O'Neill was asked (R. p. 254): "Assuming that a woman was walking along the sidewalk after dark, between seven and eight in the evening of September 10th, and she fell into a hole in the sidewalk, caused by the removal of a board in the sidewalk, and was picked up unconscious, and remained so until about twelve o'clock the same night—did you hear the testimony about the examination on the next day? A. Yes, sir.

Q. And further on? A. Yes, sir.

Q. Did you hear the plaintiff's testimony?

A. Plaintiff's testimony and all of Doctor Neilsen's.

Q. Assuming the truth of the testimony which you heard, and the truth of the statement which I incorporate here as to the manner of the accident, combining that with the objective conditions which you found on your examination, doctor, what would you say was the cause of the condition of the knee which you found?"

Dr. Neilsen was asked (R. p. 207): "Assuming that the accident happened in this way, that she was walking along a sidewalk and fell into a hole in the darkness of the night and was picked up unconscious and brought to her home; that falling occurred between seven and eight o'clock, and that she remained unconscious until you saw her at eleven o'clock in the evening—taking that into consideration, together with the fact that prior to this she was a strong and healthy woman—these facts, combined with what you found on your last examination of the pelvic organ, have you then an opinion as to the cause of the pelvic conditions you have described?"

These questions fairly present every important factor upon which appellant grounds its objections, and

to which the legal propositions contended for are directed.

None of the questions answered by Doctors O'Neill and Kerber in any way invades the province of the jury as to the finding of facts; they merely assume the recited testimony to be true, and the answers are based upon the assumption of their verity. The jury still remain the judges of the facts involved and assumed as true, solely for the purpose of forming a premise upon which answers may be predicated. Should the jury disagree with this assumption, and find the facts contrary to it—which is their province and duty—then the testimony of the witnesses becomes of no avail, and in such circumstances the jury must disregard it entirely, and would treat it as valueless as an aid in finding a verdict.

Pyle v. Pyle, 158 Ill. 289, cited by appellant in support of his contention, is without force. The case at bar is clearly distinguishable, for the rule announced in Schneider v. Manning, 121 Ill. 376, was neither changed, modified or overruled in the Pyle case. It is unmistakably applicable and decisive against appellant's contention. There was no attempt in the Pyle case to detract from the force of the legal principle announced in Schneider v. Manning. It was simply inapplicable to the question then before the court. The court say (on pages 299 and 300): "The ruling in Schneider v. Manning * * * does not sustain the action of the Circuit Court in this case. Here there was a conflict in the evidence, and the experts had heard testimony on both sides of the case, and they were called upon to give their opinions upon the evidence that they heard. On the other hand, in Schneider v. Manning, the medical expert, Dr. Hays, was called as a witness by the proponents of the will, and testified that he had heard all the evidence introduced by the contestants. He was then asked this question: 'Having heard that

evidence on the part of the contestants, state whether or not, in your opinion, from a medical standpoint, from that evidence, Hugh McGlennon was of sound or unsound mind on September 6, 1879.' It was held that it was not error to overrule an objection to that question. It was in substance assuming the truth of the facts testified to by the witnesses for contestants, and asking the opinion of an expert upon the case thus made;'' and while the court in case *supra* did say that the better way was to cover the facts upon which the opinion of the expert witness was desired hypothetically, still, whether the better way or not, the method pursued was not subject to judicial disapproval. But the argument is fallacious as applied to the condition found here of no controversy or dispute in the evidence heard by the experts, either at the time of propounding the question or subsequently. In Schneider v. Manning, the court quotes with approval from Greenleaf on Evidence, vol. 1, sec. 440: ''On questions of science, skill or trade, or others of the like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. Thus the opinions of medical men are constantly admitted as to the cause of disease as collected from a number of circumstances, and as to other subjects of professional skill; and such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself, as proved by other witnesses on the trial.''

Dr. Neilsen was the attending physician of appellee, examined her injuries soon after the time of their infliction, and continued in attendance upon her to the time of the trial. The question embodying, as it did, a statement of the happening of the accident and his own knowledge of the injuries of appellee, was sufficient for him to predicate an opinion as to the cause of appellee's injuries.

Louisville, etc., Railroad v. Shires, Adm'r, 108 Ill.

City of Chicago v. Didier.

617, is decisively in point. There the physician who attended and dressed the injuries of the plaintiff was asked this question: "What, in your opinion and knowledge of Mr. Ostrander's previous health and condition, has caused his present illness or disorder as described by you?" He answered, "My opinion is, it results from the injury in November last." The physician had not examined or treated the patient before the accident, but had known and observed him for sometime, and from such observation believed him to be in good health. This is strikingly similar to the case at bar. Appellee was admittedly a strong, healthy woman immediately before the accident, which Doctor Neilsen was perfectly justified in assuming. He had professional knowledge of her injuries, and we think we may dispose of the question in the laconic language of the court in Shires case, *supra:* "We think he had sufficient knowledge upon which to base an intelligent opinion as to the cause of his—her—then illness."

In Friess v. N. Y. Cent. Ry., 22 N. Y. Supp. 104, this question was asked of the attending physician: "Besides the accident was there any other cause that would account for this condition of the head?" He answered "No," and the court said: "As the witness was a physician, had attended the plaintiff, knew all his symptoms and his condition, we think he was qualified to answer the question, and that the evidence was properly admitted."

We gather from appellant's brief that Traction Co. v. Wilson, 217 Ill. 47, is considered as supporting the contention that it is error to embody in a question to a medical man for his consideration in answering a hypothetical question, evidence heard by him from the witness stand. We are unable to discern that this case holds to any such doctrine. A Doctor Strum having testified to his having examined plaintiff and heard her testify, was asked and answered, over the objection of defendant, the following question: "In

view of that, and in view of the examination you have made, and also in view of the symptoms you have discovered by means of your examination, what relation would you say does her present condition bear to the injuries mentioned?" This was not held to be subject to the objection made, and the judgment of recovery by the injured plaintiff was affirmed.

City of Chicago v. Powers, 117 Ill. App. 453, is also cited by appellant, with other cases, contending that they announce a doctrine that for a medical witness to attribute the result of a condition or injury to the obvious cause of it, is error, that such witness could go no farther than to say such accident might cause the injury or produce the condition. While there is some foundation in these cases in seeming support of this contention, we are unable to concede such to be the law applicable here.

This court said, in an opinion by Mr. Justice Adams, in People's Gas Light & Coke Co. v. Porter, 102 Ill. App. 461: "The hypothetical questions put to the physicians did not call for their opinion as to whether the asphyxiation caused the conditions described, but whether it *might* have caused them; and they expressed no opinion as to whether it did or not cause them. Physicians are called in such cases as the present, for the very purpose of enlightening the jury as to whether the physical conditions claimed to have resulted from the injury did or not result from it, and when they express no opinion on that question, they furnish no basis for the assessment of damages. The proper mode of examination is to state hypothetically the facts which the evidence tends to prove, and call for the physician's opinion on the facts stated, as to what caused the conditions described in the hypothetical question, not what might have caused them. 2 Jones on Evidence, 372, 380. It is the opinion of the physician on the question at issue between the parties, which is material (12 Am. & Eng. Ency.

City of Chicago v. Didier.

of Law, 2nd ed., p. 444-445), his opinion on what was, not what might have been."

This rule of law as stated by this court in case last cited finds support in numerous decisions in most of the states of the Union, and is likewise well supported by the text of writers on the subject of evidence of recognized and approved ability and learning. The learned counsel for appellee has been diligent in collating these authorities in his brief. They are numerous, too numerous to be here set down, notwithstanding they not only adorn but illuminate and elucidate in a highly satisfactory manner the whole subject. We will indulge in a few citations only from Illinois: Village of Chatsworth v. Rowe, 166 Ill. 114; I. C. Ry. v. Treat, 179 Ill. 576; affirming 75 Ill. App. 327; O. & M. Ry. v. Webb, 142 Ill. 404; Traction Co. v. Fortier, 205 Ill. 305; P. F. W. & C. v. Moore, 110 Ill. App. 304; Netcher v. Bernstein, 110 Ill. App. 484.

Also the following from Digests, Encyclopædias and text books: Am. & Eng. Ency. of Law, 2nd ed., Vol. 12, sec. 45, pp. 444-451; 20 Cent. Dig. Evidence, sec. 2337; C. Y. C. Law and Procedure, Vol. 17, 194, 195, 196; Ency. of Evidence (1905), Vol. 5, 574, 585; Wigmore on Evidence, Vol. 1, sec. 673; Wharton on Evidence, sec. 444; 2 Jones on Evidence, secs. 372 and 380; Rogers Expert Testimony, sec. 49.

Hanchett v. Haas, 125 Ill. App. 111, is also in accord with this doctrine.

In Burt v. State, 39 L. R. A. 305, there will be found a very useful brief, with ample citation of authority, the greater weight of which favors the rule of law contended for by appellee and here discussed.

This case is readily distinguishable from I. C. R. R. v. Smith, 208 Ill. 608. Here the facts were assumed in the hypothetical question, while in the Smith case, the doctors were asked to determine whether an even or an uneven surface caused the injury to the foot. This was a clear invasion of the function of the jury. It would have been permissible for counsel to have

embodied any assumption as to evenness or uneven-
ness of the surface in a hypothetical question to the
doctors, if there was evidence on that subject. The
Smith case, we think, fairly presents the distinction,
but does not at all impeach the rule here laid down.
It certainly is not the duty of an expert to reconcile
conflicting evidence, but to give his opinion on facts
assumed as such in the hypothetical question. It is
permissible to assume facts in a hypothetical ques-
tion about which testimony has been heard. The ulti-
mate fact is for the jury to find, and the assumption
of truth in the hypothetical question in no way im-
pugns this right, nor trenches upon their prerogative
as judges of the facts. The truth of the evidence must
be assumed by the hypothetical question, and on such
assumption of truth the witness must answer, leav-
ing the ultimate fact as to whether or not the evidence
in the hypothetical question is true for the determina-
tion of the jury.

Traction Co. v. Wilson, 217 Ill. 47, is an authority
peculiarly in point for a medical witness.

In the case of an expert who has not heard the tes-
timony, each side to the issue has a right to an opin-
ion from the witness upon any hypothesis reasonably
consistent with the evidence, and if meagerly presented
in the examination in chief, it may be more fully
developed on cross-examination. The whole examina-
tion is within the control of the court, whose duty it
is to see that it is reasonably and fairly conducted.
Rogers Expert Testimony, 65. It is sufficient if the
questions fairly state such facts as the proof of the
questioner tends to establish, and fairly presents his
claim or theory. It cannot be expected that the hypo-
thetical question will include the proofs or theory of
the opposition, since this would require a party to as-
sume the truth of that which he generally denies. This
rule applies to both civil and criminal cases. State v
Hanley, 34 Minn. 430; McFail v. Smith, 32 Ill. App.

463; Stearns v. Field, 90 N. Y. 640; Nave v. Tucker, 70 Ind. 15; Daniells v. Aldrich, 42 Mich. 58; Meeker v. Meeker, 74 Ia. 352.

The hypothetical question may be framed upon the hypothesis of the proof of all the evidence, or of certain facts assumed to be proven for the purpose of the inquiry. Such question is not improper simply because it includes only a part of the facts in evidence. Williams v. State, 64 Md. 384. For each side to a contest on issues of fact have their theory of what is the true state of facts, and assumes that it can so prove to the satisfaction of the jury, and so assuming, shapes hypothetical questions to experts accordingly. Such is the correct practice. Cowley v. People, 83 N. Y. 464; Davis v. State, 35 Ind. 496; People v. Goldenson, 76 Cal. 328; Coyle v. Commonwealth, 104 Pa. 117.

The truth of facts assumed by the question in doubtful cases is for the jury, and if they find the assumed facts are not proved, they should disregard the opinions based upon such hypothetical questions. Rogers Expert Testimony, Sec. 32.

An opinion based on testimony heard, with a recital of testimony not heard, is held in State v. Hayden, 51 Vt. 296, to be without error.

Wigmore, in his work on Evidence, sec. 673, states logically and forcibly the conditions which have given rise to contentions as to the assumption of facts hypothetically trenching upon the province of the jury as judges of the facts, and as it is in point and instructive, we here quote it:

"This being the plain, logical and necessary reason for the use of the hypothetical question, it will easily be seen that it is not resorted to from any fear that the witness will 'usurp the function of the jury.' This bugbear, vigorously denounced with sentimental appeals to the value of jury trial, has been made to serve again and again as the dreadful source of those evils which the hypothetical question enables us to avoid.

But the expert is not trying to usurp that function, and could not if he would. He is not trying to usurp it, because his error, if any, is merely the common one of witnesses, that of presenting as knowledge what is really not knowledge; and he could not usurp it if he would, because the jury may still reject his testimony, and accept his opponent's, and no legal power, not even the judge's order, can compel them to accept the witness' statement against their will. That there is no hidden danger to the jury system, and no need of invoking rhetoric in its aid, will be seen when it is remembered that the necessity for hypothetical questions is exactly the same for a judge sitting without a jury. Whatever the tribunal, it must separate premises from conclusions, and it must wait till the end of the trial and all the evidence on both sides is in, before it determines what premises are proved and therefore which opinions have a proper basis. The usurpation theory has done much to befog bench and bar, and to assist in producing some of the confusion which attends the precedents.''

The same learned author states, section 678, that an expert witness may testify both hypothetically and from observation.

''Upon all the testimony in the case, what is your opinion on a given point?'' has been held improper where there was conflict in the evidence. People v. McElvaine, 121 N. Y. 250. Yet, having regard to the reason of the rule, many courts, in the absence of conflict in the proof, as in the case at bar, have permitted the witness to assume the truth of the evidence and the hypothetical question is permissible in that, or in varying forms comparable with it. Pyle v. Pyle, 158 Ill. 289.

It may however be conceded that the better and more approved practice is, to combine in the question the facts relied upon hypothetically as tending to greater certainty and setting at rest doubts which may be indulged as to what facts were in the mind of the

City of Chicago v. Didier.

witness upon which his opinion is based. Where there is no conflict in the evidence, the expert witness, if he heard it, is allowed to assume its verity, and if he did not hear it, to assume its truth when hypothetically stated.

While error is assigned upon the giving of instructions, such error is not urged upon us in argument, and we will therefore pass to the consideration of the final error discussed by appellant, that the verdict and judgment are excessive and not warranted by the facts.

The verdict is full and ample recompense to appellee for the injuries inflicted upon her through the fault and negligence of appellant, and were it a matter left to our discretion in the first instance, we might have awarded a less sum, yet the amount of damages to be awarded is the primary function of the jury, and unless we are able to say that it finds no sufficient support in the record, we ought not to interpose our opinion in opposition to that of the jury. In a proper case, however, it is our duty to reverse for an excessive assessment of damages, where it is plainly the offspring of passion or prejudice, and contrary, in our opinion, to the damages suffered as a proximate cause of the injury. I. C. Ry. v. Davenport, 75 Ill. App. 579; Chicago City Ry. v. Bohnow, 108 Ill. App. 346; Knickerbocker v. Bernhardt, 95 Ill. App. 24; W. C. St. Ry. Co. v. Maday, 188 Ill. 308.

We will advert to some of the uncontested facts which we think tend to uphold the amount of the jury's finding. Appellee was a strong, vigorous, healthy woman, thirty-seven years of age at the time of her fall through the city's sidewalk, and free from the ailments since which time she has suffered from. The shock from the accident was of such strength as to render her unconscious for several hours thereafter. She was in the three months stage of pregnancy. She suffered a miscarriage as a result of the accident, with violent and profuse hemorrhages of the womb, attendant with injury to her pelvic organs, necessitating

426    APPELLATE COURTS OF ILLINOIS.

VOL. 131]    Penn. R. R. Co. v. The John Anda Co.

a major surgical operation on these and adjacent parts. Her condition at the time of the trial rendered necessary a further surgical operation. She also was afflicted as a result of the accident with synovitis of the membrane lining of the knee. When the fluid in the knee, the cause of the condition, had been absorbed, it left this knee joint dry and stiff, and its mobility impaired, making her permanently lame and compelling her in walking to use a cane. Her injuries attributable solely to the accident have rendered her a permanent and hopeless invalid, and they are said to be incurable. From these undisputed serious injuries the jury were warranted in assessing the damages as high as they did, and we cannot find aught in the record justifying us in concluding that its finding was the result of passion and prejudice. In these circumstances we are not justified in substituting our own judgment for that of the jury.

We find this record free from reversible error, and the judgment of the Superior Court is affirmed.

*Affirmed.*